(No. 37419.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE DAMEN, Plaintiff in Error.

*Opinion filed September 27, 1963.*

Thomas P. Sullivan and Muller Davis, of Chicago, appointed by the court, (Thompson, Raymond, Mayer and Jenner, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Following a jury trial in the criminal court of Cook County, George Damen was convicted of the forcible rape of his wife. The jury fixed the punishment at 30 years imprisonment. The proceedings are before us on a writ of error, defendant contending that the complainant consented to the intercourse, and that prejudicial errors occurred in the evidentiary rulings.

The accusation that defendant raped his wife, while a legal possibility, is unusual and must be predicated upon actual sexual intercourse between a third party and the non-consenting wife to which the husband is an accessory and prosecuted under our statute as a principal, since consent by the wife to sexual relationships with her husband is implicit in the marital contract. *People* v. *Trumbley,* 252 Ill. 29, 35; *People* v. *Ruscitti,* 27 Ill.2d 545.

The factual situation here is bizarre and thoroughly revolting, and will not be detailed in this opinion except where necessary to an understanding of the alleged errors in the trial proceedings. The defense introduced no proof, and the People's evidence is therefore largely undisputed. Defendant is 65 years of age and lived with his wife, some 20-25 years his junior, at 1200 Sherwin in Chicago. Complainant is a registered nurse; her husband apparently was unemployed. On September 2, 1959, the couple had been married some two and one-half months during which the relationship had not been completely harmonious. The occurrences forming the basis for the charge commenced in the latter part of the morning and terminated with the ar-

rival of the police shortly after 11:00 P.M. Summarily stated, the testimony established that defendant, who drank during the day, so behaved as to alarm his wife; she attempted to leave the apartment while he was in the bathroom, but she was unable to unlock the three locks on the door before the defendant reached her. He thereupon told her he would kill her before morning, tore off her clothes, smashed furniture and threatened complainant with the broken pieces, struck her sufficiently hard to leave a scar and ordered her into the bedroom where she remained a virtual prisoner the rest of the day. Thereafter, defendant's fantastic conduct culminated in calling liquor and drug stores to have various items delivered, warning his wife before they arrived "that she had better cooperate," and then persuading Malone and Gates, two of the delivery men who arrived at different times, to have intercourse with her for which defendant paid Malone $50, and offered Gates $5. Defendant then attempted to repeat his deviate conduct, complainant resisted and succeeded in asking the telephone operator to call the police, following which defendant tore the telephone from the wall and beat her about the head with it.

A police officer testified complainant was bleeding from the head, breast and back when they arrived at about 11:15 P.M., and that complainant told him her husband had beaten and stabbed her, "compelling her to have intercourse with two colored men". A motion for a directed verdict at the conclusion of the People's case was denied, following which the People and the defendant both rested.

Defendant argues that the proof fails to establish any resistance on complainant's part to the acts of intercourse, and that she must be held to have consented thereto. A thorough review of the entire record leads us to the conclusion that the jury was fully justified in believing that complainant was "deathly afraid" as she testified, and that her lack of active resistance stemmed from her belief that,

in her words, "there was a hope for life the other way". Defendant had repeatedly threatened her life commencing that morning and continuing throughout the day, telephoned her mother in South Dakota and told her she would not see her daughter again, struck complainant when she tried to escape and tore off her clothes, smashed a chair and threatened her with a part of it, cut up her clothing with a butcher knife, kept his hand on her throat during the sexual act with Gates, beat her with the heel of his shoe, stabbed her with a serving fork and repeatedly struck her over the head with the telephone. While the last three acts occurred subsequent to the acts of intercourse, they were so intimately interwoven with the rest of the occurrences as to be properly admissible under the *res gestae* rule. (I. L. P., Evidence, sec. 74.) "Where a prosecutrix is in the possession of her faculties and physical powers, the evidence in a rape case must show such resistance as demonstrates the act was against her will. [Citing cases]". (*People* v. *Fryman,* 4 Ill.2d 224, 228.) "Although there is no fixed rule as to the degree of force required, there must be satisfactory evidence that there was such actual force [citation] or threat of force that the victim's will to resist was overcome." (*People* v. *Elder,* 25 Ill.2d 612, 614.) We believe the proof establishes defendant's lack of consent, and that the jury could well conclude complainant reasonably believed that active resistance in the presence of Malone or Gates would result in the loss of her life. The contention that the proof indicates complainant voluntarily submitted is without substance.

The defendant argues that the trial court should have required the State to elect which of the acts of intercourse would be relied upon for conviction. While the People concede that an election would have been compelled, if requested by defendant, they point out the absence of a motion to elect, and defendant admits no such motion was made in the trial court. However, defendant says

the evidence as to the second offense was repeatedly objected to and that the court should have, on its own motion, required the State to elect or have appropriately instructed the jury as to the purpose of the proof relating to the second offense. Sufficient answer to this lies in the fact that we have heretofore decided that failure of the defendant to move to require the People to elect between alternative acts or offenses is a waiver (*David v. People,* 204 Ill. 479, 487), and we have repeatedly announced the rule that the court is under no duty to give instructions not requested by counsel. Defendant seemingly urges the application of a different rule here because counsel was appointed by the court, although no claim of incompetency is made against trial counsel. The rules of procedure are the same whether counsel is appointed or privately retained, and the presence of appointed counsel is, *per se,* no reason for relaxation or nullification of applicable rules of law. To do so would result in giving to the indigent defendant a distinct advantage or preference as contrasted with the offender who pays his own counsel. Denial to the indigent of rights or remedies available to the defendant of means has repeatedly been held inimical to our constitutional guarantees. (*Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 791, 9 L. ed.2d 799; *Lane v. Brown,* 372 U.S. 447, 83 S. Ct. 768, 9 L. ed. 2d 892.) Conversely, denial to the solvent defendant of treatment as favorable as that accorded the impecunious would seem to be equally obnoxious. An indigent defendant may not be penalized as a result of his indigency, but neither may he be rewarded. We therefore hold that, in the absence of an allegation and proof of incompetency on the part of counsel, their status as "appointed" rather than "retained" is insufficient to justify relaxation of established rules of law or procedure.

Complaint is made of the action of the trial court in permitting proof of complainant's statements to officer Corbett following defendant's arrest. The officer testified

that complainant told him that "her husband had stabbed her in the breast with this meat fork, and that he had hit her with the broken telephone there on the floor in pieces, and also, I think, his shoe", and "that he had forced her to have intercourse with two colored men". Defendant argues that no portion of this statement should have been admitted because it was inadmissible hearsay, and that prejudicial error was committed by the court in overruling defendant's objections thereto. The State argues that all of the testimony was admissible either as a spontaneous declaration or as a corroborative complaint, and asks that we clarify the rules relating thereto. While defendant argues that the statements occurred at the hospital in the process of a question and answer statement being taken from prosecutrix by the officer, we do not so interpret the record. Officer Corbett testified that part of his conversation with complainant occurred at the apartment when the officers arrived there, and part at the hospital later, and that the quoted statements were the first things she told him. He further testified that he asked complainant "what happened", prior to her declaration. The language used by the witness referring to the telephone as being "there on the floor" makes it clear to us that this conversation occurred at the apartment, particularly in view of the officer's testimony that the foregoing quotations were the first things the complainant told him.

With these facts in mind we proceed to a consideration of the rules of evidence applicable thereto. We agree with the People that some confusion exists in this area as to the limitations upon admissibility. Text writers and courts generally have recognized the existence of an exception to the hearsay rule in what are known as spontaneous declarations or exclamations. One of the more cogent explanations of the basis upon which this exception exists is to be found in the following excerpt from the opinion of Justice Lockwood in *Keefe* v. *State,* 50 Ariz., 293, 72 P.2d

425: "A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective facuties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him." This court commented upon the rule in *Cunningham* v. *People*, 210 Ill. 410, at page 413, where in holding the statements of the complainant inadmissible because made in response to a series of questions put to her, and therefore not partaking of the voluntary, spontaneous nature essential to admissibility under this rule, the court said: "such complaint is admitted upon the theory that the statement of the prosecutrix represents the spontaneous expression of her outraged feelings, and for that reason is admissible in evidence without the sanction of an oath". Again, in *People* v. *Poland,* 22 Ill.2d 175, at page 181, we stated: "Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." If a statement is a true spontaneous declaration or exclamation, it is admissible, for testimonial purposes, to prove the truth of what was

said, in all types of action and not just in rape or related cases. (6 Wigmore on Evidence, 3rd ed. 1940, sec. 1750; *People* v. *Poland,* 22 Ill.2d 175.) Nor does the rule necessarily require the utterance in question to have been made by a participant in the event. It applies with equal force to the exclamations or declarations by excited observers.

In our opinion, the statement made by complainant immediately following the occurrence qualified, under the requirements of *Poland,* as a spontaneous declaration admissible in full. The fact that the officer asked complainant "what happened" is, we believe, insufficient to destroy its spontaneity. *People* v. *Harrison,* 25 Ill.2d 407.

A second class of cases exists in which the complaints of rape victims have been admitted as corroborative statements. While statements qualifying under this rule may also be admissible as spontaneous declarations, statements by the prosecutrix as to what occurred, which are made at a time too remote to qualify as spontaneous declarations, a sufficient opportunity for "reflection and invention" having intervened, may gain admission hereunder. (*People* v. *Poland,* 22 Ill.2d 175.) The basis of their admission is that it is entirely natural that the victim of forcible rape would have spoken out regarding it, and the fact that she did not do so would in effect be evidence of the fact that nothing violent had occurred. If proof of such complaints were not permitted, the judge or jury might naturally assume that no complaint was made, and it is for that reason the prosecution is allowed to forestall this assumption by showing that the woman was not silent and that a complaint was in fact made. Under the early rule of hue-and-cry, it was necessary that the complaint should have been freshly made, and many courts, in enunciating the modern rule, state that the complaint must have been recent in order that the fact of its making may be admitted. (See cases collected in the note to sec. 1135, 4 Wigmore on Evidence, 3rd ed. 1940.) Our decisions have generally required that

the complaint be promptly made, (*People* v. *Symons*, 23 Ill.2d 126, 130; *People* v. *Furlong*, 392 Ill. 247, 250), but we have also admitted proof of complaints made some two months following the occurrence where the interval of delay was satisfactorily explained. (*People* v. *Mason*, 301 Ill. 370, 379.) While Wigmore would admit proof showing the fact of a complaint no matter when made, and irrespective of its remoteness from the actual occurrence, the majority of courts, including Illinois, have not gone this far. It is clear from our decisions that there is no fixed or definite limit of time within which the complaint must be made, (*People* v. *Ristau*, 363 Ill. 583, 587), but that a complaint made without inconsistent or unexplained delay may properly be shown. (*People* v. *Furlong*, 392 Ill. 247, 250; *People* v. *Davis*, 10 Ill.2d 430.) It must have been spontaneous and not made as a result of a series of questions to which answers were given. (*People* v. *Fryman*, 4 Ill.2d 224, 228.) Under this rule, as recognized by our prior decisions, only the fact of the complaint, and not the details thereof, may be admitted into evidence, and it is necessary, before such statement is admissible at all, that the complainant be a witness in the proceeding in which the statement is introduced. (*People* v. *Furlong; People* v. *Davis*.) The reason for this is simply that since admissibility is for the purpose of rebutting the presumption arising from the silence of the complainant, it is unnecessary to show the details of the declaration, but only the fact of its making in order to negative the presumption arising from silence. The State points out an apparent departure by us in *People* v. *Garreau*, 27 Ill.2d 388, from our earlier holdings in *People* v. *Davis* and *People* v. *Fryman*, among others, that proof of a corroborative complaint could not include any details of the occurrence nor name the perpetrator. While it is true we held admissible in *Garreau* a statement naming the defendant, this point apparently was neither raised by the parties nor considered

by us. We do not, therefore, regard *Garreau* as having overruled our prior, consistently maintained position that no details of the occurrence, including defendant's name, may be admitted under the corroborative statement rule. The hazard encountered by any other holding is that the lapse of time which disqualifies the statement as a spontaneous declaration also provides the complainant with an opportunity for reflection and invention. While the contents of a spontaneous declaration may be shown *in toto,* proof of complainant's corroborative statement, which fails to qualify as a spontaneous declaration because of the lapse of time, is, we believe, best restricted to the fact that a complaint was made with only such additions, if any, as may be necessary to identify the event as the one before the court.

Defendant's final contention is that he was prejudically restricted in his cross-examination of complainant. Defendant sought to question her as to events prior to September 2, 1959, indicating to the trial court that he intended to cross-examine her as to the details of her relationship with defendant from the time they first met. There is nothing in the record justifying this proposed action, and the court properly sustained objections to this line of questioning. Defense counsel's inquiries as to the happenings on June 24, 1959, which were foreclosed on cross-examination, were permitted on recross-examination, and it was shown that the parties fought on that occasion, complainant's ear being slit in the process. Nor do we find any abuse of discretion in the refusal of the judge to permit inquiries regarding complainant's ability to handle her second husband, whether she lived with defendant before marrying him, her visit to her mother's home, *etc. People* v. *Halteman,* 10 Ill.2d 74, 86; *People* v. *Gilbert,* 12 Ill.2d 410, 415.

It is our opinion that the defendant received a fair trial, and the judgment of the criminal court of Cook County is hereby affirmed.

*Judgment affirmed.*