(No. 41446.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN ADAMS, Appellant.

*Opinion filed September 29, 1970.*

SAM ADAM, EDWARD M. GENSON, and CHARLES B. EVANS, all of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE, and THOMAS HOLUM, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, the defendant, John Adams, was found guilty of the unlawful sale of a narcotic drug and was sentenced to a term of from 10 to 13 years in the penitentiary. On appeal he claims that the judgment of conviction must be set aside because (1) he was deprived of his constitutional right to

be advised of the nature of the accusation against him, (2) he was denied his constitutionally assured right to counsel at the preliminary hearing, and (3) the evidence was insufficient as a matter of law to support the finding of guilty. The constitutional questions presented give this court jurisdiction on direct appeal. Ill. Rev. Stat. 1969, ch. 110A, par. 603.

The relevant portion of the indictment charged the defendant with the sale of the narcotic drug heroin "in that he knowingly sold to Al Nichols." At trial evidence disclosed that the true name of the alleged purchaser was Albert Bradley, but that he was also known as Al Nichols. The record further shows that the defendant was aware of the true name of the purchaser prior to trial, this having been made known to the defendant by the State in response to his motion for bill of particulars. It is not disputed that the evidence showed that the "Al Nichols" named in the indictment and the Albert Bradley who testified at the trial are the same person.

The defendant contends that the intentional misnomer which appeared in the indictment deprived him of his constitutional right to be informed of the nature of the accusation against him. A defect of this character in an indictment, it is charged, prevents an accused from intelligently pleading to the charge, interferes with the effective preparation of a defense, and precludes a defendant from raising a conviction or acquittal as a plea in bar to a subsequent prosecution for the same offense. The defendant argues that in order to satisfy the constitutional requirements, an indictment for the unlawful sale of narcotics must accurately set forth the true and correct name of the alleged purchaser.

Section 9 of article II of the constitution of Illinois provides, in part, that "In all criminal prosecutions the accused shall have the right  *  *  *  to demand the nature and cause of the accusation  *  *  *." This constitutional assurance has been interpreted to mean that the offense

charged must be sufficiently set forth so that the accused will be able properly to prepare his defense and raise the judgment as a plea in bar to a subsequent prosecution for the same offense. *People* v. *Griffin,* 36 Ill.2d 430; *People* v. *Beeftink,* 21 Ill.2d 282.

We consider that it is not necessary that an indictment for the sale of a narcotic drug name the purchaser in order to satisfy this constitutional requirement. Section 3 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—3) declares it to be "unlawful for any person to * * * possess * * * sell * * * any narcotic drug, except as authorized in this Act." The statute creating the offense makes no reference to the purchaser of the drug and his identity is not an element of the crime. The gravamen of the offense is the unlawful sale itself. Many Federal courts considering the sufficiency of indictments returned under a Federal statute which resembles ours have also concluded that the purchaser of the drug need not be named in the indictment. The Federal statute makes it unlawful for any person "to sell, barter, exchange, or give away narcotic drugs" except under specified exceptions and circumstances. (26 U.S.C., sec. 4705(a).) In *Clay* v. *United States* (10th cir. 1963), 326 F.2d 196, 199, the court, affirming a conviction based on an indictment which did not include the name of the purchaser, stated: "The statute makes no provision or requirement with respect to the identity of the person to whom the illegal sale is made and we must therefore conclude * * * that the identity of the purchaser is not an element of the offense." Too, in *Collins* v. *Markley* (7th cir. 1965), 346 F.2d 230, it was held that the purchaser need not be named in an indictment under that statute. See also, *Aggers* v. *United States* (8th cir. 1966), 366 F.2d 744; *United States* v. *Jackson* (3rd cir. 1965), 344 F.2d 158; *Sanchez* v. *United States* (1st cir. 1965), 341 F.2d 379, *cert.* den. 381 U.S. 940.

The question remaining here is the effect of the indict-

ment's incorrectly naming the purchaser in the indictment. This court has held in *People* v. *Figgers,* 23 Ill.2d 516, 519, that where an indictment charges the elements essential to an offense under the statute, other matters unnecessarily appearing in the indictment may be rejected as surplusage. (*Cf. People* v. *Peppas,* 24 Ill.2d 483.) Thus, as the naming of the person to whom the illegal sale was made was not essential to the sufficiency of the indictment in question, the misnomer may be regarded as surplusage. A question evolving from this is whether the variance between the allegations in the indictment and the evidence presented was fatal so as to invalidate the conviction. This court has held that no fatal variance will be found where from the record there is no question as to the identity of the person named in the indictment. (*People* v. *Jankowski,* 391 Ill. 298, 302.) Too, variances as to names will not be regarded as material unless it appears that the jury was misled or that substantial harm was thereby brought upon the defendant. (*People* v. *Allen,* 17 Ill.2d 55, 58.) Here, the record shows unmistakeably that it was disclosed in the trial that "Al Nichols" and Albert Bradley were the same person. No prejudice was incurred by the defendant as he was aware of this prior to trial. The defendant's protection against double jeopardy is assured because identification can be established by the use of the record or parol testimony or both. *People* v. *Jankowski,* 391 Ill. 298; *People* v. *Petropoulos,* 59 Ill. App. 2d 298, affirmed 34 Ill.2d 179; *cf. Russell* v. *United States,* 369 U.S. 749, 8 L. Ed. 2d 240, 82 S. Ct. 1038.

Parenthetically, we would observe that while, of course, a void indictment cannot be validated by a bill of particulars (*People* v. *Blanchett,* 33 Ill.2d 527; *People* v. *Flynn,* 375 Ill. 366; *Russell* v. *United States,* 369 U.S. 749, 8 L. Ed. 2d 240, 82 S. Ct. 1038), a defendant accused by an indictment legally adequate in detail may seek a bill for greater detail of the charge against him "so as to enable the accused to better understand the nature of the charge against him or

better prepare his defense." *People* v. *Patrick,* 38 Ill.2d 255, 260; see, *Scott* v. *United States* (3rd cir. 1965), 342 F.2d 813.

Next the defendant argues that he was erroneously denied his constitutional right to have counsel appointed for him at the preliminary hearing. No request for the appointment of counsel was made at the time of the hearing, but we have held that if the right to counsel exists by virtue of the critical nature of the proceedings an accused is entitled to representation even though there has not been a specific request on his part for counsel. (*People* v. *Bonner,* 37 Ill.2d 553, 561.) We have held that a preliminary hearing does not constitute a "critical stage" in the criminal prosecution so as to give rise to a constitutional right to representation. (*People* v. *Bonner,* 37 Ill.2d 553; *People* v. *Morris,* 30 Ill.2d 406.) In *Bonner* and *Morris* the preliminary hearings were characterized as proceedings to ascertain whether a crime had been committed, and to determine whether there was probable cause to believe that the accused had committed the crime. However, the United States Supreme Court recently held that the preliminary hearing proceeding in Alabama was a "critical stage" in that State's criminal process requiring the presence of counsel. *Coleman* v. *Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999, 38 U.S.L.W. 4535.

A preliminary hearing in Alabama, as in Illinois, has the purpose of determining whether there is probable cause to believe an offense has been committed by the defendant (Code of Alabama, Tit. 15, secs. 139, 140, 151; Ill. Rev. Stat. 1969, ch. 38, par. 109—3). In both States the hearing is not a required step in the process of prosecution, as the prosecutor may seek an indictment directly from the grand jury, thereby eliminating the proceeding. (*Ex Parte Campbell,* 278 Ala. 114, 176 S. 2d 242; Ill. Rev. Stat. 1969, ch. 38, par. 111—2.) In neither State is a defendant required to offer defenses at the hearing at the risk of being pre-

cluded from raising them at the trial itself (*Alabama* v. *Coleman*, 44 Ala. App. 429, 433, 211 So. 2d 917, 921; *People* v. *Bonner*, 37 Ill.2d 553, 560). We conclude that the preliminary hearing procedures of Alabama and Illinois are substantially alike and we must consider because of *Coleman* v. *Alabama*, 38 U.S.L.W. 4535, that a preliminary hearing conducted pursuant to section 109—3 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 109—3) is a "critical stage" in this State's criminal process so as to entitle the accused to the assistance of counsel.

The pivotal consideration in the remaining question of whether the direction of *Coleman* is to be applied to the present case is whether *Coleman* is to be given retroactive effect or is to be applied prospectively only. On this question of retroactive or prospective application the United States Supreme Court said in *Stovall* v. *Denno*, 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967: "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

The Supreme Court's purpose in requiring representation by counsel at the preliminary hearing was obviously to provide greater protection for the rights of an accused. The court in *Coleman* discussed considerations which would serve this purpose: "First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case, that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client

and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail." *Coleman* v. *Alabama*, 26 L. Ed. 2d at 397, 38 U.S.L.W. 4535, 4537-4538.

The right to counsel at trial (*Gideon* v. *Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792), and on appeal (*Douglas* v. *California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814), and at some forms of arraignment (*Hamilton* v. *Alabama*, 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157) have been made retroactive because the Supreme Court considered that at these stages in the criminal process the absence of counsel "almost invariably" results in the denial of a fair trial. (See *Arsenault* v. *Massachusetts*, 393 U.S. 5, 21 L. Ed. 2d 5, 89 S. Ct. 35.) However, in *Stovall* the court observed: "The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities'. [Citation.] Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice." *Stovall* v. *Denno*, 388 U.S. 293, 298, 18 L. Ed. 2d 1199, 1204.

On this scale of probabilities, we judge that the lack of counsel at a preliminary hearing involves less danger to "the integrity of the truth-determining process at trial" than the omission of counsel at the trial itself or on appeal. Such danger is not ordinarily greater, we consider, at a preliminary hearing at which the accused is unrepresented than at a pretrial line-up or at an interrogation conducted without presence of an attorney. The constitutional right to counsel at these two stages was denied retroactive application by the Supreme Court. *Stovall* v. *Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.

Against this background, we regard, too, the prior reliance of law enforcement authorities upon former holdings that counsel was not required at preliminary hearings and the effect of a retrospective application of the new requirement. (*Cf. Jenkins* v. *Delaware,* 395 U.S. 213, 23 L. Ed. 2d 253, 89 S. Ct. 1677.) Most Federal and State courts that considered the question ruled that a preliminary hearing, which had for its primary purpose the determination of probable cause and at which the accused was not required to enter a plea, waive any defenses or otherwise prejudice himself, was not a "critical stage" requiring the appointment of counsel. (See Annot., 5 A.L.R. 2d 1269, 1314-1342 and cases cited.) It is clear there has been understandable reliance on these rulings by law enforcement officials and the courts. It is clear, too, that a retroactive application of *Coleman* would obviously have a far reaching and grievous effect on the administration of justice. Thousands of cases without doubt would have to be reconsidered in light of the new requirement. The impact of this on already congested criminal dockets and now overburdened courts would be increased by the evident difficulties of applying the harmless error doctrine (*Chapman* v. *California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824,) to many of the cases to be reconsidered, as the Supreme Court directed to be done in *Coleman.* We conclude from these considerations that *Coleman* should not be given retroactive application.

The final point raised by the defendant is that the evidence was insufficient to establish guilt beyond a reasonable doubt. We consider that because of the circumstances of the case any detailed summary of evidence would be lengthy and really unnecessary. The evidence presented showed a controlled sale of narcotics by an informant acting in cooperation with two police officers. Circumstantial evidence and testimony, if believed, certainly demonstrated the defendant's guilt. It was the function of the trial court as the trier of fact to evaluate the credibility of the witnesses and

its "finding of guilty will be disturbed only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt." (*People v. Scott*, 38 Ill.2d 302, 306.) A review of the evidence discloses no cause to disturb the finding of the trial judge. In *People v. Realmo*, 28 Ill.2d 510, this court affirmed a trial court's finding of guilty under circumstances resembling those here. There one or more officers, although not viewing the transfer of either the narcotics or the marked currency, as here, observed a significant part of the defendant's activity is making a controlled sale of narcotics, and corroborated an informer's testimony in this respect. In *Realmo*, too, none of the prerecorded money was recovered by the police.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*