THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD DEAN HOOD *et al.*, Defendants-Appellants.

(No. 71-180;

Third District—May 14, 1973.

330

STOUDER, P. J., dissenting.

Franklin S. Wallace, of Rock Island, (Marshall E. Douglas, of counsel,) for appellants.

F. Stewart Merdian, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendants Ronald Dean Hood and David Roseman appeal from an

8 to 25 year sentence imposed by the circuit court of Rock Island County following a jury trial in which defendant Hood was found guilty of rape, indecent liberties with a child and aggravated assault, and Roseman was found guilty of rape and indecent liberties.

On appeal in this court, defendants seek reversal of the convictions and assert as grounds: (1) that there was no preliminary hearing and they were thereby prejudiced; (2) that proof of guilt of the defendants was insufficient as a matter of law; (3) that hearsay statements of the complaining witness were improperly admitted; and (4) that the prosecution brought out prejudicial testimony, made prejudicial statements to the jury, and brought forth rebuttal testimony which was improperly broad because it duplicated the testimony presented by the prosecution in its case in chief. Defendants also ask for a reduction of their sentences on the ground that such sentences are excessive.

Defendants were arrested on November 12, 1970, and were arraigned on November 13, 1970. The magistrate presiding at the arraignment continued the proceeding until November 24, 1970. Defendants contend that the proceeding was continued for the purpose of holding a preliminary hearing at such time. The State, however, says that the matter was continued without mention, at least in the record, of a preliminary hearing. Docket entries on each of the cases indicate simply that the cases were continued to November 24, 1970.

On November 19, 1970, counsel for defendants notified the State's Attorney that a preliminary hearing would be held on November 24, 1970, at 10:00 A.M. Defense counsel had subpoenaed witnesses to testify at that hearing. On November 24, 1970, the State's Attorney appeared at the appointed time but he requested and received a continuance. Defendants were present and apparently ready to proceed with the preliminary hearing. They protested the continuance and offered to prove that prior to the scheduled hearing the State's Attorney had instructed the subpoenaed witnesses not to appear. The court then suggested that his calendar had been pre-empted for November 24, 1970, and, despite defense counsel's objections, the court then scheduled the preliminary hearing to be held on December 10, 1970. Defense counsel assert that the court was aware that the grand jury would meet prior to such date.

On December 3 and December 7, 1970, defense counsel moved for an immediate preliminary hearing but the circuit judge denied that motion. On December 10, 1970, approximately 4 weeks after defendants were arrested, the grand jury returned indictments for the offenses referred to. The State's Attorney asserted that this eliminated the need for a preliminary hearing. On December 18, 1970, counsel for defendant moved to dismiss the indictments on the ground that defendants had not re-

ceived a preliminary hearing. This motion was denied. It is contended by defendants on appeal that the deprivation of the preliminary hearing prevented them from ascertaining the existence of a witness who might have testified in the favor of defendants.

■■ In chapter 38, section 109—1 of 1969 Illinois Revised Statutes, it is provided that a person arrested shall be taken "without unnecessary delay" before the judge; that the judge, among other duties, shall hold a preliminary hearing, where he has no jurisdiction to try the offense. In section 111—2(a) of said chapter, it is expressly provided that if a defendant is charged with the commission of a felony and there is no waiver of prosecution by indictment with a concurrence by the State, a preliminary hearing or examination upon complaint or information shall be conducted in the manner provided by the Act unless defendant waives such hearing or examination or *"unless a bill of indictment on the same felony charge is returned in open court prior to such hearing or examination."* (Emphasis added.) It is thus apparent from the language of such section that no preliminary hearing is required if an indictment had been returned.

With a view to "due process" considerations, it is clear that there is no evidence of any overreaching by the State or the trial court or that any adverse evidence was elicited by the State from the defendants during the interval between the time of defendants' arrest and the return of the indictment. A four-week interval intervened between arrest and indictment. We find nothing in the record to justify the conclusion that there was a violation of the rights of defendants in not conducting a preliminary hearing during such period since a four-week period is not an unreasonable delay under the circumstances as shown in the record.

■■ Defendants contend that *Coleman v. Alabama,* 399 U.S. 1, and *People v. Adams,* 46 Ill.2d 220, 263 N.E.2d 490 (*affirmed,* 406 U.S. 278) establish that a preliminary hearing is a "critical" stage of a criminal prosecution and, therefore, is guaranteed to the accused as a matter of constitutional right. Neither of the cases referred to gives consideration to the question of a preliminary hearing, with respect to whether such hearing is necessarily required. These cases simply support a narrower principle, to the effect that if a preliminary hearing is held, it constitutes a critical stage of a criminal prosecution and that an indigent accused has a constitutional right to have counsel represent him at the hearing. As a matter of fact, in the *Adams* case, the Illinois Supreme Court, citing section 111—2 of chapter 38 of the Illinois Revised Statutes, clearly recognized that a preliminary hearing is "not a required step in the process of prosecution, as a prosecutor may seek an indictment from the grand jury, thereby eliminating the proceeding." See also: *People v.*

*Petruso,* 35 Ill.2d 578, 221 N.E.2d 276; *People v. Gonzales,* 125 Ill.App.2d 225, 260 N.E.2d 234.

It is also apparent from the record that no prejudice actually resulted to defendants. Defendants' only allegation of such prejudice is that if it had not been for the delay they might have been able to learn of the existence and identity of a girl who purportedly last was present with complaining witness before the occurrence of the rapes and other acts complained of. Shortly after the indictment was returned, this witness left the jurisdiction, and neither the State nor the defendants have been able to locate her. Defendants' defense was based on an alibi and on allegations likewise that complaining witness was in an inebriated and emotionally overwrought state when she last was observed prior to the alleged attack. Defendants contend that the missing girl could have been a material witness in their favor. The arguments, however, overlook the fact that the State never knew the girl's identity.

Defendants next contend that there is insufficient proof as a matter of law that defendants were guilty of the charge of rape or indecent liberties. They also argue that the complaining witness's testimony was erroneously admitted into evidence and that it is hearsay and not an exception to the hearsay rule. They rely on the authority of *People v. Taylor,* 48 Ill.2d 91, 268 N.E.2d 865. We believe, however, that the case of *People v. Damen,* 28 Ill.2d 464, is a precedent more applicable under the facts of the instant case.

The challenged hearsay statement occurred, following the alleged attack when the 15-year-old complaining witness went directly to an apartment where her friends were gathered. She was disheveled and distraught and in response to a friend's question concerning her appearance and what had happened she said, "Oh, you guys, you guys", and then said she could not tell them for fear her assaulters would harm her. She then broke down and started to cry, became hysterical and was unable to speak. She then said she had been raped. This statement and conversation lasted two to three minutes. The complaining witness said on cross-examination that she had been in the presence of her friends for five or ten minutes before she told them what had happened. The court permitted the witnesses to testify that the complainant told them she had been raped but refused to allow them to state the details of her statement.

Statements made by an alleged victim of a rape are controlled by a different evidentiary rule than would apply in other cases. In *People v. Vaughn,* 390 Ill. 360, where a complaint was made by a prosecutrix in a rape case, the court concluded that even if it was not a part of the so-called *res gestae* it may be proven by third persons as an exception to the hearsay rule if such complaint was made as soon as prac-

ticable and without inconsistent delay. The corroborative statements are deemed to constitute an exception to the hearsay rule and that the purpose of the exception is to permit the complaining witness to dispel the negative inference which could arise if the witnesses were not permitted to state that the complainant told them she had been raped. See *People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25.

■■■ In the cause before us, the complaining witness was 15 years of age and not a mature adult. The spontaneity of her declaration and its admissibility must be analyzed within the context of her age and of the purpose of the exception. We believe that it was properly admitted as a corroborative statement. (*People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25.) The trial judge properly determined within his discretion that in the circumstances of the case before us with a complainant of tender age who had been hysterical and apparently unable to speak before she made her statement, that the statement was properly corroborative and sufficiently spontaneous and, therefore, admissible at least as a corroborating statement. In any event, it would not have constituted harmful error here because the complainant herself was present in court and was subjected to cross-examination and testified that she made the statement. (*People v. Smith*, 25 Ill.2d 219, 184 N.E.2d 841.) Even in absence of the challenged statement, sufficient corroboration existed from complainant's physical appearance when she returned to the apartment and further from the testimony of another witness that she accompanied plaintiff to her home following the attack and personally saw complainant's underpants which were "stiff and everything." We see no reversible error in the procedure. The testimony alone of the complainant would be sufficient if her testimony is clear and convincing. *People v. Vaughn*, 390 Ill. 360.

■■ It is asserted by defendants that the complainant's testimony was unbelievable as a matter of law. They contend that although the complainant testified she was a virgin prior to the assault there was no evidence of vaginal bleeding following the attack. They also argue there was no evidence of seminal stains on the rear seat of the automobile where the attack allegedly took place. No authority is cited in support of the contention relating to vaginal bleeding and since the implications of such lack of bleeding are not so universally known that we might take judicial notice of them, we will not presume to alter the jury's implicit determination that lack of bleeding did not make complainant's testimony unbelievable. The testimony as to lack of seminal stains on a portion of the rear seat of the automobile was testimony which was for the jury to weigh in determining the guilt or innocence of defendants. Similar testimony with respect to whether the underpants were placed

in the hamper or discarded was also a matter for the jury to weigh in determining guilt or innocence. We also conclude that the fact that no medical evidence was presented to show that complaining witness had been raped does not cast reasonable doubt as a matter of law upon the testimony of complainant. Since defendants brought this matter to the attention of the jury at the trial, it, also, was for the jury to consider in weighing the guilt or innocence of defendants.

■■ Defendants also complain they were prejudiced by improper remarks made by the prosecutor and by the court's reception of rebuttal testimony on behalf of the State which covered matters already presented in its case in chief. Defendants complained specifically of the use of the words "mug shot" in reference to a photograph of one defendant and of the use by the prosecutor of the words "rape partners" or "cohorts" in reference to the defendants. From our review of the record it is apparent that such references were more inadvertent and isolated than studied or repetitive. The words "mug shot" were spoken by the complaining witness and not the prosecutor. We, therefore, find no basis for concluding that such language constituted reversible error. The repetition in rebuttal of a portion of matters shown in the case in chief is permissible in the discretion of the court if the rebuttal evidence tends to explain, repel, contradict, or disprove the defense. (*People v. Daugherty*, 43 Ill.2d 251, 253 N.E.2d 389.) We do not find that there was any abuse of discretion in this regard which would justify reversal in this cause.

The final request made by defendants is that their sentences be reduced because they are excessive. The court sentenced each defendant to serve a term of imprisonment of not less than 8 nor more than 25 years for the offenses of rape. While it is clear that defendants were properly convicted of the offense of rape, the facts and circumstances in the case lead us to the conclusion that the sentences should be modified. Although this circumstance does not excuse the subsequent conduct of defendants, the record shows that the complaining witness entered the automobile occupied by defendants voluntarily. We particularly note from the record that mitigating evidence was presented on behalf of each defendant. It is shown that Hood is not only married and the father of three children, including a child who is blind and mentally retarded, all of whom he had been supporting, but he also helped, as well, to support the children of his widowed mother-in-law. Neither Hood nor Roseman had a record of any serious prior conviction. Roseman had supported, as best he could, his wife and her children by a prior marriage. He had saved a child from drowning and on another occasion had prevented a disaster in a boating accident.

■■ The Illinois Supreme Court in the case of *People v. Chupich*,

53 Ill.2d 572, established that a case has not been finally adjudicated until the last direct appeal has been decided or when the time for filing such appeal has run. Under the Illinois Code of Corrections, chapter 38, § 1008—2—4, it is specified that if the offense being prosecuted has not reached "a final adjudication" then for the purpose of sentencing, the sentences under the Code of Corrections apply if they are less than under the prior law. In view of the *Chupich* precedent and the language of the Code of Corrections, we have determined that the modification of sentence in this cause should follow recommendations contained in the Code of Corrections. The sentences imposed upon defendants in this cause, therefore, are modified to sentences of not less than 4 years nor more than 12 years (plus 5 years of parole).

We, therefore, affirm the convictions and modify the sentences of both defendants in this cause to a term of not less than 4 years nor more than 12 years (plus 5 years parole).

Affirmed and sentences modified.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE STOUDER dissenting:

I disagree with the majority of the court: I believe the trial court's action regarding the preliminary hearing was erroneous, prejudicial and constituted reversible error. Furthermore, I am not satisfied the evidence is sufficient to establish the guilt of the defendants beyond a reasonable doubt.

With respect to the preliminary hearing, it seems to me that the issue presented on this appeal has a somewhat different dimension than that discussed in the majority opinion. The basic issue presented by this appeal is whether the defendants were entitled to a preliminary hearing and if so whether the action of the prosecution and trial court erroneously prevented the defendants from having such a hearing.

The defendants first appeared in court on November 13, 1970, having been arrested pursuant to complaint filed November 10, 1970. According to the docket entry, the court explained their rights and continued the case until November 24. Whether defendants were advised on Novmber 13 of their right to have a preliminary hearing or whether the case was continued for that purpose does not appear of record and in any event is immaterial to the issue raised on this appeal.

However, what transpired on November 24 is of critical importance in considering the merits of defendants' claims. It is undisputed that notice of motion to hold preliminary hearing on November 24, 1970, the date to which the cause had been continued, was served on the State's Attorney

on November 19, 1970. The remaining essential facts are disclosed by the colloquy between defense counsel, judge and assistant State's Attorney on the morning of November 24. A motion was filed by the assistant State's Attorney for continuance on the morning of November 24. It appears from the statements of the assistant State's Attorney that prior arrangements for the continuance may have been made between court and assistant State's Attorney without notice to defense counsel. Although there was some vague references by the assistant State's Attorney to other cases as a basis for his request for a continuance, it appears that such cases had been "scratched off" the calendar. The trial judge did not at any time indicate that a hearing could not be conveniently held on November 24 and even refused to consider the possibility of holding a hearing earlier than December 10, 1970, the date being selected over the objction of defense counsel. In arguing that the preliminary hearing should be held on November 24, Wallace, an attorney for one of the defendants, insisted, "The State's Attorney's Office refused to give a preliminary hearing. They do all sorts of maneuvering to do away with a preliminary hearing. The law I feel in this case is being openly flaunted by the State's Attorney's office." Later he declared, "In regard to procedure. In Rock Island County you can't get a preliminary hearing."

In their argument during the November 24th hearing, in their December 3 motion for immediate preliminary hearing, and, in their motion of December 18 to dismiss the indictment, the defendants alleged and such allegation was never denied, that preliminary hearings were not held in Rock Island County, because according to the view of the State's Attorney, approved by the courts, preliminary hearings were not considered critical stages in the criminal prosecution and hence not required. It was also undenied that continuances were granted which had the effect and purpose of scheduling hearings beyond when the case was expected to have been presented to the grand jury. Indeed, in its brief, the only position taken upon this issue by the State is that the court is not required to afford a defendant a preliminary hearing. According to the State, since a hearing is not required it is immaterial whether the defendant is prevented from having such a hearing either by continuances or otherwise.

The major thrust of the majority opinion is that the delay of about one month was "reasonable" yet nowhere in its brief does the State even mention the term "reasonable" or claim that the court's action was in any way governed by or based upon any rule of reasonableness.

Although this problem may have constitutional overtones, the principal issue involves the application of parts of section 109, chapter 38, Ill. Rev. Stat. 1969. By the terms of Section 109—1(a), a person arrested "* * *

shall be taken without unnecessary delay before the nearest and most accessible judge   *   *   *". According to Section 109—1(b),

"The judge shall:

(1) Inform the defendant of the charge against him and shall provide him with a copy of the charge.

(2) Advise the defendant of his right to counsel and if indigent shall appoint a public defender or licensed attorney at law of this State to represent him in accordance with the provisions of Section 113—3 of this Code.

(3) Hold a preliminary hearing in those cases where the judge is without jurisdiction to try the offense; and

(4) Admit the defendant to bail in accordance with the provisions of Article 110 of this Code."

It should be observed that the language of the statute is mandatory and the duties which the court "shall" perform are clearly specified. That the statute imposes a duty to hold a preliminary hearing, just as it requires the court to advise the defendant of the charges, his rights and the appointment of counsel for him if indigent, is, I believe, inescapable from the language of the statute itself.

Contrary to the assertion of the prosecution, such cases as *People v. Adams*, 46 Ill.2d 200, 263 N.E.2d 490; *People v. Bonner*, 37 Ill.2d 553, 229 N.E.2d 527; and *People v. Petruso*, 35 Ill.2d 578, 221 N.E.2d 276, do not affect the duty to hold the preliminary hearing provided in Section 109—1(b)(3) nor do they hold either directly or by necessary implication that the defendant is not entitled to a preliminary hearing. In observing as does the *Adams* case, that a preliminary hearing is "not a required step in the process of prosecution, as a prosecutor may seek an indictment from the grand jury, thereby eliminating the proceeding", the court is merely observing that a prior charge, arrest and preliminary hearing are not conditions precedent to the return of an indictment. In other words the prosecution is not "required" to first arrest a person accused of a crime before presenting the case to the grand jury and seeking an indictment. However, in the large majority of cases, the person accused of crime is first arrested and charged before an indictment is sought and under such circumstances section 109—1(b)(3) and 109—3 are applicable. In so far as the determination of whether probable cause exists for believing a criminal offense has been committed and believing that the person accused thereof committed such offense, one of the principal purposes of a preliminary hearing is to prevent the unjustified detention of a person charged with a criminal offense.

The majority of the court and I reached the same conclusion regarding the duty imposed by statute to hold a preliminary hearing as soon as

reasonably practicable and without unreasonable delay and to that extent I concur in the observations in the majority opinion. However, by emphasizing a quotation selected from *Adams*, it appears that the majority has not unconditionally approved or applied the statutory duty and seems to suggest that perhaps the diligence to be exercised is somewhat lessened when the procedure is characterized as "not required" in another frame of reference, *i.e.*, whether the right of representation should be given retro-active effect.

Discussing the scope, function and importance of a preliminary hearing and in particular the lawyer's relation thereto, the court in *People v. Adams*, 46 Ill.2d 200, 263 N.E.2d 490, quotes the following with approval from the case of *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387,

> "First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case, that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail."

In addition, section 109—3 describes other functions of the preliminary hearing, including the perpetuation of testimony for either the prosecution or the defense and means to secure the attendance of witnesses for the prosecution or defense at any future trial.

While it may be a primary function of a preliminary hearing to determine whether the defendant should be further held to answer the charges, the incidental effects are significant and offer additional justification for requiring the trial court to provide such a hearing, at least when there is reasonable opportunity to do so prior to indictment. The Illinois Constitution of 1970 in article 1, section 7 (not in effect at the time of preliminary hearing conducted in this case) provides that a preliminary hearing shall be held promptly, thereby reinforcing the pre-existing statutory duty.

Since neither the prosecution nor the trial court believed the defendants to be entitled to a preliminary hearing without unreasonable delay, I do not see how it can be said that the facts reasonably justified the

court's action or that the court acted reasonably in accord with the statutory mandate. Even if this aspect of the trial court's action is ignored, the record reveals an absence of any justification for not holding the preliminary hearing on November 24 and an absence of any facts warranting the conclusion that a continuance of nearly two weeks and a half was reasonable. A delay of nearly a month while the defendants were in jail is, I believe, an unreasonable delay in providing a preliminary hearing in the absence of a showing of any justification, reason or excuse therefore. Under the Federal statutes, 18 U.S.C. § 3060(c), the defendant is entitled to such a preliminary examination within 10 days from the date of the complaint. (*United States v. Brumley*, 466 F.2d 911.) While the Federal statute is not applicable to this case and does not purport to be an interpretation of the Illinois statute, nevertheless the shortness of the period provided in the Federal statute is instructive.

This brings me to the question of prejudice which may have resulted from the court's error in not affording defendants a preliminary hearing within a reasonable time. The defendants have charged that if the preliminary hearing had been held and they had learned from the prosecutrix of the existence of a girl named "Candy" who was with the prosecutrix at sometime prior to her entry into the car of her alleged attackers, they might have been able to locate Candy and she might have been helpful as a defense witness. It also appears from the testimony of the prosecutrix and her two girl-friends that Candy was with the prosecutrix in Carlos' apartment and left with her for the dance. Candy and the prosecutrix were picked up by a friend of Candy's on the way and proceeded to the place of the dance. Candy left and the prosecutrix stayed about 10 minutes according to her testimony, but apparently saw no one at the dance that she knew. Candy seems to be the only witness able to describe what may have happened after the prosecutrix left Carlos' apartment and left the dance. The procedure of the court which prevented the defendants from learning of Candy did constitute prejudice. If neither the assistant State's Attorney nor the prosecutrix knew Candy or knew of her whereabouts at time of trial, such circumstances warrant the conclusion that earlier knowledge of her existence which might have been disclosed at a preliminary hearing would substantially increase the likelihood that she could have been located by the defendants. Furthermore, since she was one of the last persons to have seen the prosecutrix as the latter was leaving the dance, her testimony had the potential of having some bearing on the incident. Whether her testimony would have benefited the defendants or for that matter would have aided the prosecution cannot be ascertained, but it is the inability to ascertain

the nature of her potential testimony which constitutes an element of the prejudice resulting from the failure to hold the preliminary hearing.

I believe the defendants were substantially prejudiced by the improper action of the prosecution and the trial court, and since such prejudice cannot be eliminated by a remand, I believe the only alternative should be a reversal of the convictions.

In believing as I do that the evidence is not satisfactory for justifying a conclusion that the defendants were guilty beyond a reasonable doubt, I am primarily concerned with the unsatisfactory nature of the evidence proffered as corroborating evidence that an offense occurred. In *People v. Taylor*, 48 Ill.2d 91, 268 N.E.2d 865, the court observed:

> "The case of *People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25, discusses in detail the background and reasons for the admissibility of declarations of a complainant as an exception to the hearsay rule either as spontaneous or unreflecting statements, or, in rape cases, as corroborative statements admitted to foreclose the assumption that a failure to speak out would in effect be evidence of the fact that nothing violent occurred. We held that to be admitted as a spontaneous statement it must not have been made as a result of questions, that to be admitted as corroborative it must have been made without inconsistent or unexplained delay and also not as a result of questions. In *Damen* the victim had been brutally assaulted and raped, but in her resistance she had succeeded in asking the telephone operator to call the police before the defendant had torn the phone from the wall and beat her over the head with it. When the police arrived and noted the shambles in the apartment and the bleeding and beaten victim they asked, 'What happened?' We held her response to be a spontaneous declaration and that under the circumstances the single question, 'What happened?' was insufficient to destroy its spontaneity.
>
> In the case before us the girl did not immediately make any explanation or complaint to the fireman. The fireman asked if he could help her. She said she wanted to use the phone. Even in answer to his second question as to whether anything was wrong she still indicated nothing that could be deemed as uncontrolled and spontaneous utterance of outraged feelings as required by *Damen*."

The trial court ruled that the statements of the prosecutrix to her girl-friends, Marcia Knapp and Sue Hobbs, were spontaneous declarations in accord with the rule as applied in *People v. Damen*, 28 Ill.2d 464, 193

N.E.2d 25, rather than impermissible hearsay as the rule was applied in *People v. Taylor*, 48 Ill.2d 91, 268 N.E.2d 865. An examination of the record persuades me that the alleged statements of the prosecutrix were even less spontaneous in the case at bar then those in the *Taylor* case.

This case had been tried before and resulted in a mistrial because of a deadlocked jury. During the first trial the prosecutrix and her two girlfriends, Knapp and Hobbs, had testified so that both the prosecution and defense knew in some detail the nature of the testimony which each of the three witnesses might offer. Rather than calling the prosecutrix as the first witness, the prosecution called Marcia Knapp as the first witness. She testified to the three girls getting together earlier in the evening, their going to the apartment of Carlos Olivera, the departure of the prosecutrix in the direction of the dance, the return of the prosecutrix to the apartment building and especially she described what took place and what she said after the prosecutrix returned to the apartment.

According to Knapp, the prosecutrix went up the stairs to the second floor apartment of Carlos Olivera, knocked on the door, asked for Carlos but was told by Chot, his brother, that he didn't know where Carlos was. As the prosecutrix was going back down the stairs, the witness and her companion, Sue Hobbs, called to the prosecutrix to come into the first floor vacant apartment where the girls were. When the witness first saw the prosecutrix in front of the downstairs apartment door, the prosecutrix said, "Oh you guys, you guys". At this juncture defense counsel objected to the statement of the prosecutrix or any other statements because hearsay and inadmissible and at the same time requested a hearing on the matter outside the presence of the jury which was held. After a preliminary discussion between court and counsel this witness was questioned outside the presence of the jury with particular regard to other statements which the prosecution proposed to elicit from the witness. The objections of the defendants were overruled, the court holding, after considering both the *Taylor* and *Damen* cases, that the statements of the prosecutrix were spontaneous.

When the witness resumed her testimony after the jury was recalled, she testified that after the prosecutrix had made the statement, "Oh you guys, you guys", that "Sue Hobbs asked her what was wrong and she said, 'Oh, you guys, you guys' And Sue goes, 'What?' and she goes, 'I can't tell you or they will kill me,' Sue goes—Sue said, 'Who will kill you.' and she says, 'I can't tell.' And then—"

"STATE: Slow down and talk louder.

A. Then she just broke down, she cried and acted hysterical and she turned toward the wall and she just cried, she couldn't stop

and then she started breathing real hard and she couldn't stop and she couldn't talk.

\* \* \*

A. And then she just turned toward the wall and couldn't talk and just couldn't stop crying and we finally got her to say something and she told us that she had been raped and we asked her who it was and she said that she had never seen them before

\* \* \*."

Sue Hobbs was called next by the prosecution and her testimony confirmed generally the events which had taken place earlier in the evening including her testimony regarding the return of the prosecutrix to the apartment at about 11:45. She confirmed that the prosecutrix had gone to the second floor apartment and had asked for Carlos and when they (witness and Marcia Knapp) heard the voice of the prosecutrix they called to her. According to this witness, as the prosecutrix was coming down the stairs she said, "Oh you guys, you guys" and repeated the same as she entered the first floor apartment. According to this witness, "She said—I go, 'What's wrong?' and she said, 'I can't tell you,' and I go, 'Why?' and she goes 'Because.' and I go, 'Why?' and she goes—she just goes, 'Oh, you guys, you guys.' and we go, 'What's wrong?' and she goes, 'I can't tell you or they will kill me.' and we were all looking at her real funny cause we didn't know what was going on or anything and she broke down and started crying and we kept asking her what was wrong and she wouldn't tell us and then finally she—."

According to the testimony of both Knapp and Hobbs the prosecutrix looked pale, her eye shadow was smeared and her shirt was described as wrinkled with the tail pulled out. According to the witnesses she looked as if she might have been crying but otherwise there was nothing unusual about her appearance.

According to the testimony of Debbie Loding, the prosecutrix, concerning what transpired after she returned to the apartment building, she indicated that she ran up to the second floor apartment, knocked, asked for Carlos and was told by Chot he was not there. Hobbs called to her from the downstairs apartment and according to the witness,

"\* \* \* And I was just starting to turn around and Sue opened the door downstairs and she goes, 'Loding'. And I was scared and I turned around and I just stood there and she goes, 'Come on in here.' and I goes downstairs and I couldn't speak to them.

Q. Why not?

MR. DOUGLAS: I will object to that, Your Honor.

Q. Did you try to say something to them?

A. Well, I couldn't—

MR. DOUGLAS: Objection, leading.

BY THE COURT: Sustained.

Q. What happened then?

A. Sue kept asking me what was wrong, everybody kept saying, 'What happened?'

＊　　＊　　＊

MR. COLLINSON: Your Honor, for the record, we would object to any conversations that took place between herself and the other persons as being hearsay.

＊　　＊　　＊

BY THE COURT: Overruled.

STATE: Go ahead and say what happened.

A. I couldn't tell them.

MR. DOUGLAS: Objection to the reason, the testimony is before the Court and that is that she said she could not talk.

BY THE COURT: Overruled.

A. I told them I couldn't tell them because if I told on them they said they would kill me if I did.　＊　＊　＊"

On cross-examination of prosecutrix she was asked:

"Q. Then just as you turned around you were able to look down the stairs and see Sue Hobbs?

A. Well, she—she—well, I wasn't turned around when she yelled at me, she was talking to me and then I turned around and saw her.

Q. And you were downstairs about five (5) to ten (10) minutes before you said anything about what happened, isn't that correct?

A. Yes.

Q. And this was only after they asked you a number of times, 'What happened, what happened?'

A. Yes."

In the testimony of the prosecutrix and in particular her cross-examination, it can be seen that a period of time elapsed even after the prosecutrix went downstairs and also that many questions were asked. The order of calling the witnesses tended to minimize both the time lag and the questioning which took place and the defendants objection included the failure to present a proper foundation, *i.e.*, the prosecutrix's own testimony in order to establish the time and chronological relationship between the claimed offense and the events which took place in the apartment. The court ruled that such a foundation was unnecessary but permitted the testimony of the first witness on the basis that the prose-

cutrix would substantiate the sequence, thereby making the testimony of the first and second witnesses corroborative of a spontaneous declaration. We agree with the trial court that the order of calling witnesses was within the discretion of the prosecution and that the testimony of the prosecutrix was not required before other evidence was presented. However, it is also clear that the order of presenting the witnesses tended to obscure the issue to some extent and once having agreed to admit the evidence of the other witnesses the court could thereafter hardly refuse to receive the testimony of the prosecutrix since a contrary ruling at this stage would have necessitated a second mistrial.

From the foregoing testimony the only reasonable conclusion to be drawn therefrom is that the complaint of rape was elicited, even viewing the evidence most favorably to the prosecution, after numerous questions, a substantial lapse of time, after other opportunities to register her complaint and where the circumstances disclosed opportunity for reflection and action no longer motivated or controlled by prior events.

There is another aspect of this case which disturbs me. I think there is another essential condition which must be shown before an otherwise inadmissible hearsay declaration can have the force of a spontaneous utterance justifying its admission as substantial probative evidence. The rule justifying spontaneous utterances is based on our belief that reliability and veracity are assured by the continuing influence of the prior events. Implicit in the rule is that reliability and veracity are equally dependant upon the circumstances surrounding the complaint or spontaneous declaration, including the actions and conduct of the witnesses based on their response to the complaint. In other words, if the witnesses to the claimed spontaneous utterance do not act or react in a manner consistent with the claim of rape which they are called upon to corroborate, it appears to me that such testimony no longer has any legal effect as corroboration and is insufficient to justify admission of hearsay testimony under the spontaneous utterance rule. In this case initially we have the scene of the declaration as a vacant apartment in which two girlfriends of the prosecutrix have been spending time with their boyfriends. After the claimed declaration is made what do the parties do? The prosecutrix and her two girlfriends go to the home of the prosecutrix but even though her mother was awake nothing whatsover is said about the affair. In fact nothing is said by the prosecutrix or her two girlfriends until Monday evening, three days after the incident occurred, at which time prosecutrix reported the incident to her parents. Even then contact with the police was not made by the prosecutrix or her girlfriends until the following day. Such conduct is, in my opinion, wholly lacking in any

basis for importing trust or veracity to the hearsay declarations of the prosecutrix.

Laboratory technicians examined the back seat of the car belonging to Hood, as well as samples of hair, but were unable to find any evidence corroborating the presence of the prosecutrix in the car or corroborating the fact that intercourse may have taken place on the back seat. Such testimony might be regarded as negative corroboration in the sense the absence of any such evidence, where the same should have been expected, tends to refute the contrary claim of the prosecutrix.

Thus, I believe the purported corroborating testimony of the prosecutrix and her two friends is not a spontaneous utterance within the rule of *Taylor*. The reasons for applying the rule against such hearsay are even more cogent when the purported corroborating evidence viewed as a whole is inconsistent with and fails to afford any underlying reasons for imputing truthfulness and veracity to such evidence. Since in my view the alleged corroborating evidence was erroneously admitted by the trial court, it seems to me that the evidence is insufficient to warrant the defendants conviction for rape and should be reversed.