(No. 23518.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD RISTAU, Plaintiff in Error.

*Opinion filed June 10, 1936.*

ELLIODOR M. LIBONATI, (ABRAHAM MILLER, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE, MELVIN REMBE, and E. I. HARRINGTON, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Edward Ristau waived a jury and the criminal court of Cook county found him guilty of the charge of assault with intent to commit rape. Motions for a new trial and in arrest of judgment were overruled and he was sentenced to the penitentiary for a term of from one to fourteen years. He has sued out this writ of error.

The prosecutrix, Muriel Strauss, testified that she was eighteen years old and that she lived at 5839 South Kilbourn avenue, in Chicago. About 10:30 o'clock in the evening of Thursday, April 18, 1935, while on her way home, she stopped at the home of Francis Ahern to find out if he had obtained tickets for a show they planned to attend. Mrs. Ahern told Muriel that Francis was over at a club which was located in the home of a Mr. Larson, at 5839 South Kostner avenue, two blocks east of Muriel's home. Larson permitted a neighborhood club of men to meet at his home on Tuesday, Thursday and Saturday evenings to play pool and checkers. Muriel went over to the

club and played checkers until about 11:30. She knew the defendant, who was there at the time, and said that he had always before been polite and gentlemanly to her. When she left, the defendant asked if he could take her home. She declined his invitation and left for home. The defendant followed her. When she reached a point on Fifty-ninth street half a block west of Kostner avenue the defendant tried to embrace her. She shook him off and began running toward her home. Defendant overtook her in about a block and a half. He threw her to the ground in the weeds away from the street and sidewalk and after choking and beating her had sexual intercourse with her. There were no houses in the block where the assault took place. She ran past the only house in the block to the east because she thought she could get away from the defendant and get home. It was a moonlight night. As soon as the defendant released her she went home. No one was up, and she went into the bath-room, turned on the light and looked at her injuries. Her face was swollen and her legs and arms were scratched. Her underclothes were torn and her stockings were ripped. The next morning she told her aunt, with whom she lived, and the police were called. She went to a doctor on Friday evening. On Saturday she accompanied a neighbor woman to the municipal court, where a charge of disorderly conduct was lodged against the defendant.

Mrs. Selma Backstrom, the aunt, testified that when she saw Muriel the next morning her face was twice its normal size, one eye was completely and the other almost closed, her nose was fractured, there were finger prints on her throat, and she could hardly talk. Muriel told her of the attack, and that she was afraid to wake her up when she came in because the man had threatened to kill her if she said anything. The aunt testified her niece's clothes were torn and bloody. She called a doctor but could not see him until 7:00 o'clock in the evening, and because she

had to go to work she sent a neighbor lady with Muriel to report the occurrence to the police.

Larson, at whose home the club met on April 18, 1935, testified that he had known the defendant a year. He saw him follow Muriel when she left witness' home. He returned in about half an hour. He was mussed up and had blood on his shirt front and coat. His lips were swollen and bleeding. He said that he had had trouble with somebody and that he had "fixed him."

James McGuirk, one of the police officers who arrested the defendant, stated that he told witness he did not attack Miss Strauss but admitted he hit her after she struck him.

The defendant testified that he lived with his father and mother, and that he had seen prosecutrix three or four times before April 18, 1935. He said he was at the club that evening from 7:30 to 9:30 and after leaving returned about 10:30. He had had a few drinks in the meantime. He had been there a few minutes when the prosecutrix came into the club. She stayed about an hour and left about five minutes before he did. He said that when he went out she was standing at Larson's front gate, and that she asked him if he was going toward Sixty-third street. He replied that he was, and they started walking in that direction. After going half a block she told him he smelled of liquor and that she did not want to walk on the same side of the street with him. He then gave her a push and she scratched his face. He hit her three or four times and she started home. He returned to the Larson house. He was arrested on the following Monday evening on a warrant charging him with disorderly conduct. He pleaded guilty to that charge and was fined $200 and costs and sent to the Bridewell for three months and thirteen days. He denied categorically the details of the assault testified to by the prosecutrix.

Mary Mraz, a friend of the defendant's family, testified that his reputation for chastity and morality was excellent.

The defendant contends that the testimony as to Muriel's complaint to her aunt was entitled to no weight because she did not complain at the first opportunity. This testimony was not objected to, and therefore the question of its admissibility is. waived. (*People* v. *Allen,* 289 Ill. 218, 220.) As to the weight to be given such a complaint, there is no definite limit of time within which the complaint must be made. (*People* v. *Mason,* 301 Ill. 370, 378.) The record shows that no one was up when the prosecutrix returned home, and it may well be that the defendant's threat to kill her deterred her from arousing her aunt to give expression to her outraged feelings. This delay of a few hours is easily understood, and we cannot say that the trial judge erred in giving weight to this evidence.

The defendant says it was error to permit Selma Backstrom to describe the condition of her niece's clothes, and that the clothes themselves are the best evidence. In *Chambers* v. *State,* 81 S. E. 880, it was held that the best-evidence rule does not prevent proof as to the condition of the prosecutrix's clothing, shortly after the rape, by description rather than by producing such clothing before a jury. The best-evidence rule is not infringed by a selection of weaker instead of stronger proof, or by an omission to supply all the proof capable of being produced. 10 R. C. L. 903.

The defendant contends that there was a variance between the indictment and the proof, in that the crime charged was assault with intent to commit rape while the evidence showed that a rape had been committed. The test is whether or not the evidence shows the defendant guilty of the crime charged. The fact that the evidence may also prove a greater offense creates no variance. Proof of rape includes proof of an assault with intent to commit rape, and there was therefore no variance. *People* v. *Mason,* 301 Ill. 370, 379; *People* v. *Karpovich,* 288 id. 268.

The defendant insists that the proof of his good reputation was sufficient to raise a reasonable doubt. While

proof of good character is not proof of innocence, it may be sufficient, when considered with all the other evidence, to raise a reasonable doubt. (*People* v. *Nelson,* 360 Ill. 562; *People* v. *Dameron,* 346 id. 408.) In the cases announcing this rule the testimony of the prosecutrix was either uncorroborated or incredible, while that of the defendant was corroborated or tended to prove an alibi. Under the facts of this case the testimony of good character was not sufficient to raise a reasonable doubt.

The defendant's last contention is that he was not proved guilty beyond a reasonable doubt. The prosecutrix was corroborated by the testimony of her aunt as to the condition of her clothing, eyes, face, arms and legs the morning after the assault. The fact that she was attacked within twenty-five feet of a street lamp does not render her story incredible. The neighborhood was sparsely settled, the hour was late, and no one else was there. In addition, the defendant bore the prosecutrix down into the weeds. Her screams were stopped by the beating and choking he inflicted upon her. The defendant's contention that the prosecutrix testified to three different and contradictory accounts of the occurrence is not borne out by the record. She testified that she told Judge Graber the same thing that she testified to in this prosecution. An objection was sustained to the defendant's statement that she did not testify about the rape at the time he pleaded guilty to disorderly conduct. He did not remember what she said at the preliminary hearing. There is no evidence that she ever testified other than as she did on the trial of this case. Her testimony is further corroborated by the witness Larson. He stated that the defendant returned to witness' place in about half an hour after he followed the prosecutrix out, and that he explained his disheveled condition by saying that he had had trouble with somebody and that he had "fixed him." The defendant's testimony is improbable, for it would not require half an hour to walk a short distance with the prose-

cutrix, strike her three or four times, and then retrace his steps to Larson's.

Where a cause is tried without a jury the law has committed to the trial judge the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the trial court. *People* v. *Overbey,* 362 Ill. 488; *People* v. *Sciales,* 353 id. 169.

After considering all the evidence, we cannot say that there is a reasonable doubt of the defendant's guilt.

The judgment of the criminal court is right, and it is affirmed.

*Judgment affirmed.*