(No. 36986.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PERLE TAPPIN, Plaintiff in Error.

*Opinion filed May 27, 1963.*

FRANKLIN M. LAZARUS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and THOMAS A. HETT, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG 

Defendant, Perle Tappin, was indicted in the criminal court of Cook County on two indictments. He was repre-

sented by counsel of his own choice and pleaded not guilty, waived a jury trial and was found guilty of contributing to the delinquency of a minor and sentenced to a term of one year's confinement in the common jail of Cook County. He was also found guilty on the second indictment of the crime of indecent liberties and of contributing to the delinquency of a minor and sentenced to the Illinois State Penitentiary for a term of not less than three years nor more than six years, both sentences to run concurrently. He brings this writ of error to review these convictions.

Defendant, Perle Tappin, also known as Jack Tappin, and Betty Vele, aunt of the complaining witness, had lived together in a common-law relationship for over eight years. In October, 1959, when the complaining witness, Jean Ann Doxtater, was about five and one-half years old, she visited her aunt, Betty Vele, and Tappin in their apartment in Chicago. She testified that during the week she stayed with them there was a time when she was alone with "Uncle Jack", as she called Tappin, and that he had molested her. She also testified that on Christmas night, 1960, he molested her in an unnatural way. Jean Ann and her mother, who had lived in Milwaukee, moved to Chicago on May 2, 1960, and began occupancy of the lower apartment in the two-story building in which the defendant and Betty Vele were living.

On Thursday, June 22, 1961, the child was home from school. She stated that in the afternoon she went up to see the defendant and that at that time he molested her again. On the following Monday, June 26, 1961, Jean Ann's mother had a conversation with Jean Ann about whether the defendant had ever bothered her. Jean Ann started crying and pointed upstairs. The mother said, "Jack?" Jean Ann said, "Yes."

Jean Ann was taken to Dr. Harry M. Siegel on June 29 where she was examined and counsel stipulated that the examination revealed a marked redness and irritation in the

external vaginal orifice; the hymen had been ruptured and there was a marked purulent discharge exuding from the vagina. Later in the day on June 29, Dr. Janina Jaksevicius-Yoksha, a physician of the family court, examined Jean Ann and found the hymen slightly distensible, irregular; that the vagina admitted one finger, an opening more than that which is natural for a child of her age; and that there was a marked redness around the hymen plus urethra. A complaint was filed by the child's mother against the defendant, and the defendant, upon hearing that a warrant had been issued for his arrest, surrendered himself.

The defendant denied ever having any sexual contact with the prosecutrix and testified that he was only home about twenty minutes in the afternoon of June 22, after which time he visited two friends, picked up his common-law wife at about 10:30 P.M., and returned home with her. The two friends did not testify.

To reverse his conviction the defendant urges that the testimony given by the victim should have been excluded because she lacked the "intelligence, and ability to comprehend the meaning of an oath and the moral obligation to speak the truth."

In *People* v. *Johnson,* 298 Ill. 52, at pages 54 and 55, which was cited with approval in *People* v. *Peck,* 314 Ill. 237, we stated the rule of competency as follows: "The competency of a child to testify depends upon his or her intelligence, understanding and moral sense. If the preliminary examination shows that the child understands the nature and meaning of an oath and is of sufficient intelligence and understanding to comprehend the things about which she is called upon to testify, it is not error to admit her testimony." The age of the witness is not the controlling factor as to her competency, but rather the intelligence and understanding.

The record before us shows no objection by the defendant to the competency of the witness. We said in

*People* v. *Matthews,* 17 Ill.2d 502, at page 506, in a case very similar to the one at bar, "the defendant has the duty to raise an objection to the competency of a child as a witness at the time of the trial, and the question cannot be raised for the first time on appeal."

We recognize the difficulty of the defendant in meeting a charge such as this and preparing a defense. The record indicates that the State's Attorney did lay a foundation for the testimony of the child and that she testified to a general understanding of God, a recognition that God punishes those who do not tell the truth, and that if she promised to tell the truth she must do so. She also exhibited a basic understanding of reality that appeared to the trial court sufficient to allow her to comprehend the thing about which she was called to testify. We note that the witness conducted herself very ably on the stand and in response to attempts by the defense attorney to confuse her tenaciously stuck to her story with a conviction and understanding often absent even in adult witnesses. In addition, the trial court had the opportunity, which is not available to this court, to observe the demeanor of the witness and adjust its opinion of her competency on such observation.

The defendant contends that the child was an admitted liar and her testimony not capable of belief. The child did state that she had lied to her mother twice, but she added that she had received spankings both times upon discovery. From the record we feel that she was impressed by the spankings and had been graphically reminded of the consequences of such falsehoods. Further, the defendant, in his testimony, stated that he had not known the child to lie. We find no error in the admission of the testimony of the alleged victim.

The defendant asserts that where the defendant denies a charge of indecent liberties, there must be substantial corroboration of the prosecuting witness by some other evidence, fact, or circumstances in the case. (*People* v.

*Martin,* 380 Ill. 328, 330.) We feel that such a test was met in this case. A review of the record shows that the child related the acts which were performed upon her in detail, which would be unlikely unless she had experienced the same. The medical testimony of doctors examining her less than a week after the last alleged act substantiates the fact that the child's condition was not that of a normal seven-year-old girl and that as related by the physician of the family court, after having made examinations in thousands of similar situations, she had never seen instances where there had been no sexual molestation where the vagina admitted one finger in a child of that age.

The defendant argues that there was a "rift between Tappin and Betty Vele with whom he had been living and the rift arose out of the fact that Tappin was having relations with the younger sister of Betty Vele, namely, Susie Vele." He goes on to state that "one can only speculate as to the evidence which transpired from June 22, 1961, until August 10, 1961," implying that the sisters had indoctrinated the complaining witness as they might wish. The evidence shows that Betty Vele, the common-law wife of the defendant, went with him to the police station when he turned himself in and stood beside him during the period from that time until the trial. This would appear inconsistent with the speculation of the defense that this was an evil plot to convict the defendant inspired and conceived by the wrath of women's scorn.

The trial court properly permitted the child to testify, and she did so in a clear and convincing manner, describing in detail the acts performed upon her. She unequivocally identified the defendant as her assailant and her testimony was sufficiently corroborated. We are, therefore, of the opinion that the conviction should be affirmed.

The judgments of the criminal court of Cook County are affirmed.

*Judgments affirmed.*