THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE W. BRITTON, Defendant-Appellant.

First District (1st Division)    No. 78-1356

Opinion filed January 7, 1980.—Rehearing denied February 4, 1980.

Ralph Ruebner and Michael J. Pelletier, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisen-Stein, and Cary J. Wintroub, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, George W. Britton (defendant) was found guilty of four counts of indecent liberties with a child (Ill. Rev. Stat. 1973, ch. 38, par. 11—4). He was sentenced to four concurrent terms of 12 to 40 years. Defendant appeals.

In this court, defendant contends the State failed to prove beyond a reasonable doubt that the minors involved in the offenses were not prostitutes; the trial judge refused to consider defendant's prostitute defense when he made his finding of guilty; the judgments of conviction on two of the four counts of indecent liberties should be vacated since defendant's conduct can only constitute two such offenses; and the defendant's sentence is excessive.

Edward, 13½ years old, testified that on the morning of May 18, 1976, he and his younger brother Herbert, 11 years old, skipped school and went to defendant's apartment. Edward had been in defendant's apartment on 10 previous occasions. Herbert had been there on four previous occasions. Edward knew defendant would be home because he had seen defendant the previous weekend and defendant had told him to come over that day. Edward rang the doorbell and defendant let the two boys into his apartment. They watched a film which showed a boy and girl engaging in sex acts. The boys then had juice and donuts. Defendant, Edward and Herbert all went into the bedroom and defendant told the boys to take off their clothes. Edward took off his own clothes. Defendant took off Herbert's clothes and then his own. Defendant pushed Herbert into Edward and the boys fell on the bed. Defendant also got on the bed, grabbed Edward by the back of the neck and pushed Edward's head into contact with his penis. Defendant did the same thing with Herbert. Defendant then engaged in fellatio with both of the boys.

The three all dressed and left the apartment. Defendant drove the boys in his truck to a Burger King restaurant where he bought them lunch. Then, he took them to a lake where they rode defendant's mini-bike. Defendant gave Edward and Herbert $3 each. Defendant then drove Edward and Herbert to within three blocks of their home. Edward and Herbert did not tell their parents what happened. The next day at school, Herbert told the principal and some teachers.

Edward further testified he took his clothes off in the apartment "because if I didn't, George [defendant] would try to hurt me or something." However, Edward also stated defendant had not threatened

him and he could have left the apartment if he wanted. Edward and Herbert had been with defendant on previous occasions and had taken their clothes off. Defendant never hit or struck Edward. Defendant had given money to Edward on other occasions but not every time Edward had sex with him. Edward stated he had not asked defendant for money on May 18, 1976, and only asked him for money one time before in order to buy a pop. While Edward testified he went to defendant's apartment to make some money, he also stated he did not know defendant was going to give him money. Defendant did not previously tell Edward he would give him money if he came over that day. Defendant told Edward not to tell anyone what was occurring between them.

Herbert testified that on the day in question it took an hour and a half for Edward and himself to walk from their home to defendant's apartment. Herbert talked with his brother about going to defendant's apartment but the boys did not talk about getting any money from defendant if they visited him. Defendant had given Herbert money before but not for having sex. Edward and Herbert went to a nearby park. When they got to the park, Herbert wanted a drink of water. The faucets in the park were not working. It was Herbert's idea to go to defendant's apartment for a drink of water. Herbert's testimony about what happened in the apartment corroborated Edward's version. Herbert also felt he was free to leave the apartment at any time. He did not remember if defendant gave him money that day. Herbert stated he did not tell his father about the incident until after he had told his teachers. He said he was afraid to tell his father what was going on between defendant and himself.

Officer Raymond Sykes testified he had a conversation with Edward and Herbert on May 19, 1976. He then proceeded to locate and place defendant under arrest. During a lawful search of defendant's apartment, the police recovered a roll of film which was stipulated to be the film shown to Edward and Herbert prior to the sexual acts with defendant.

Defendant testified he first met Edward at a park at Western and Addison. Edward was talking to a friend of the defendant. The friend left the park. Edward came over to defendant and asked for a ride on defendant's mini-bike. Defendant told Edward he would give him a ride if Edward got his parents' permission. Defendant drove Edward home. The father gave his permission and defendant and Edward returned to ride the bike. Nothing else occurred on that day.

Defendant next saw Edward when Edward came to his apartment with a boy named Danny or Darryl. Danny knew where defendant lived and had come over to his house to make money. Defendant and Danny had sex while Edward watched television. Defendant gave Danny $3 in Edward's presence and the boys left defendant's apartment. About two

weeks later defendant saw Edward and another boy named Danny in the park. Defendant talked to both of the boys about "messing around." Defendant and Danny agreed defendant would take Danny and Edward to the roller derby and pay their way if they would "mess around." Danny decided not to "mess around" but Edward did and defendant took him to the roller derby.

Defendant stated he had sex with Edward on eight or 10 separate occasions. Defendant paid him each time they had sex. He also had sex with Herbert at least four or five times and paid him each time. Edward and Herbert would not have sex unless they received money. Edward often asked for more money than defendant was willing to give. Defendant stated he considered Edward and Herbert to be prostitutes. Defendant had previously met 7- and 8-year-old prostitutes.

Defendant denied seeing Edward on the weekend prior to May 18, 1976. On May 18, at about 11:30 a.m., Edward and Herbert were standing outside defendant's apartment yelling his name. They asked to come in and defendant let them in. He had a movie projector set up and the boys brought up the subject of the movie. After watching the movie, defendant gave them tomato juice and donuts. As they sat in the front room the boys told defendant that if he was interested in having sex, they would be willing to mess around. Defendant told them he would give them $3 each and take them to Burger King. Edward and Herbert agreed and they went into the bedroom. The boys undressed themselves and they proceeded to participate in sexual acts with defendant.

Defendant denied forcing the boys into bed and also denied forcing their heads toward his penis. Defendant stated that every time Edward put his mouth to defendant's penis, he did so voluntarily. After they had sex, they dressed and left the apartment. They drove in defendant's truck to Burger King. Before getting out of the truck defendant paid Edward and Herbert $3 each. After lunch they went to the park and then defendant drove them to within three blocks of their home. Defendant denied ever telling Edward or Herbert not to tell anyone what was going on between them.

On rebuttal, the State offered a certified copy of defendant's conviction of indecent liberties with a male child under the age of 16 in Michigan on March 18, 1969.

## I.

Defendant contends the State did not prove beyond a reasonable doubt that Edward and Herbert were not prostitutes. At the time defendant was tried, it was "an affirmative defense to indecent liberties with a child that * * * [t]he child is a prostitute." (Ill. Rev. Stat. 1973,

ch. 38, par. 11—4(b)(2).) The defendant did present "some evidence" that Edward and Herbert were prostitutes. Therefore, the State had "the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." Ill. Rev. Stat. 1973, ch. 38, par. 3—2; *People v. Brown* (1971), 132 Ill. App. 2d 875, 878, 271 N.E.2d 395.

■■■ The defendant's conviction rested upon the testimony of Edward and Herbert. "It is well established that where conviction of the crime of indecent liberties rests upon the testimony of a child, the evidence must be * * * clear and convincing." (*People v. Dunbar* (1971), 1 Ill. App. 3d 308, 312, 272 N.E.2d 378.) In his brief, defendant points out that there were contradictions in Edward's testimony and that Herbert "conveniently could not remember things when cross-examined by defense counsel." However, these discrepancies were minor and go only to the weight to be afforded by the trier of fact to their testimony. *People v. Krison* (1978), 63 Ill. App. 3d 531, 535, 380 N.E.2d 449, *appeal denied* (1978), 71 Ill. 2d 619; *People v. Watts* (1974), 19 Ill. App. 3d 733, 738-39, 312 N.E.2d 672.

■■ In *Brown*, this court concluded that the term "prostitute" in the context of this affirmative defense, "has the common denominator of indiscriminate sexual intercourse or other lewdness, usually for hire." (*Brown*, 132 Ill. App. 2d 875, 878.) Neither boy's testimony indicates conduct approaching this standard.

■ Edward testified he knew what a prostitute was and knew a prostitute could be a woman, man or boy. Yet, while Edward stated defendant had given him money on May 18, 1976, as well as on other occasions, he did not know why he was getting the money. He further stated defendant did not give him money on every occasion they had sex. On May 18, money was not discussed at any time before or after the sexual acts. Defendant gave each of the boys $3 when they were in his truck by the lake. This was after the completion of all sexual activities. Edward did not ask for the money. In fact, only once did Edward ever ask defendant for money and that was because he wanted some soda pop. Furthermore, Edward testified defendant told him not to tell anyone what was occurring between him and defendant. Thus, the evidence indicates the boys did not "hire" themselves out to defendant and the money given to them was not payment for the services of prostitutes, but was simply a gift.

Herbert testified defendant took off Herbert's clothes and shoved him into Edward causing the boys to fall on the bed. Defendant got on the bed, held the boys down, and tried forcefully to push their heads towards his penis. These acts do not indicate "indiscriminate * * * lewdness" on the part of the brothers. The evidence in its entirety

indicates that defendant exploited these boys for his own sexual gratification.

In *People v. Williams* (1973), 16 Ill. App. 3d 121, 305 N.E.2d 718, the defendant also raised the affirmative defense of prostitution in an indecent liberties case. The trial court rejected his defense stating that the victim did not take part in the acts complained of " 'primarily for economic gain.' " This court agreed and remarked: "It would be a travesty on justice to allow the defendant to hide behind his gift of $3 to a sexually immature boy, such as the complainant here." (*Williams*, 16 Ill. App. 3d 121, 127.) The same concept could well be applied to the instant case.

■■ In view of contradictions in the testimony, the instant case presented an issue of credibility of the witnesses. This issue was for the trial judge as trier of fact to resolve. (*People v. Krison,* 63 Ill. App. 3d 531, 535.) In our opinion, the testimony of Edward and Herbert was clear and convincing and was amply sufficient to sustain the State's burden of proving beyond a reasonable doubt that the boys were not prostitutes. Since only issues of credibility are involved in this aspect of the case, we may not disturb the result reached by the trial court. See *People v. Lofton* (1977), 69 Ill. 2d 67, 72-73, 370 N.E.2d 517.

## II.

Defendant next argues that the trial judge refused to consider his affirmative defense of prostitution because of a personal prejudice aroused by the character of the offense. Defendant bases this contention solely on comments made by the trial judge immediately after he found defendant guilty of indecent liberties with a child. The judge stated:

> "I am not going to expound on the facts in the case. They speak for themselves.
>
> To expect society to protect an individual like Mr. Britton, because of his claim of prostitution by a nine year old and an eleven and a half year old boy, is overwhelming to me. I just can't understand that position. I don't think that the State can do anything more than prosecute these people. And it's up to us, as jurists, to take the necessary action after they have been found guilty, which I intend to do."

■■ Defendant claims these comments indicate the judge "could not accept the rule of law that if young children such as Edward and Herbert were acting as prostitutes then a defendant was not guilty of indecent liberties with a child." We find no merit in this argument. In our view, the judge's comments are more reasonably interpreted to mean that he simply rejected defendant's claim that Edward and Herbert were

prostitutes. Furthermore the record indicates that the able trial judge carefully considered the affirmative defense. After the State rested its case in chief, defendant made a motion for a directed judgment based on the prostitution defense. The trial judge heard extensive argument on the motion and declared a recess so that he and both counsel could find some case law on the subject. When the court reconvened, the judge indicated he had read the *Williams* and *Brown* cases, previously cited in this opinion, as they pertained to the prostitution defense. The judge then also heard additional argument. The judge denied the motion for a directed judgment only after careful and impartial consideration. In our opinion, the record demonstrates a total awareness by the trial judge of the affirmative defense of prostitution and a complete willingness to apply the defense if the facts so required. The holding of the supreme court in *People v. Vance* (1979), 76 Ill. 2d 171, 181, 390 N.E.2d 867, is most apt and pertinent here:

> "The fact that a judge believes the evidence in a case establishes the guilt of a defendant beyond a reasonable doubt and so holds is, of course, no indication that the judge is prejudiced against that defendant."

We find no error in this regard.

### III.

Defendant was convicted on four counts of indecent liberties with a child. He was convicted on two counts because he performed the offense with Herbert by "oral copulation" and also "lewdly fondled and touched Herbert * * *." (See Ill. Rev. Stat. 1973, ch. 38, par. 11—4.) Defendant was convicted of the other two counts because he performed the offense in the same two ways with Edward.

In *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1, the court held that where two counts of indecent liberties with a child are "based upon a single transaction, charging two acts almost simultaneous in time and involving a single victim, each of which acts was one of the three proscribed by the statute," the conduct constitutes a single offense and only one sentence should be imposed. (*Cox*, 53 Ill. 2d 101, 104, 106. See also *People v. Lilly* (1974), 56 Ill. 2d 493, 496, 309 N.E.2d 1.) Accordingly, the judgment of conviction and the sentence for one of the two counts with respect to defendant's acts with Herbert and the judgment of conviction and the sentence for one of the two counts with respect to his acts with Edward are vacated.

### IV.

Finally, defendant contends the sentence of 12 to 40 years is excessive. He urges there was no physical injury or harm inflicted upon

the children, he did not lure them to his apartment and he drove them home. Defendant has no record of any violent offenses. He has one felony conviction for indecent liberties with a child and three misdemeanor convictions for contributing to the sexual delinquency of a minor. Defendant received probation for each of these convictions. He is a high school graduate and has been steadily employed.

In *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, the court held that while a reviewing court has the power to reduce a sentence "[w]e continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review."

In *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677, defendant was found guilty of indecent liberties with a child and argued that his sentence of 12 to 70 years was excessive. The supreme court affirmed the sentence, stating that it " 'will not disturb a sentence imposed by the trial court unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose.' " *Murphy*, 72 Ill. 2d 421, 439, quoting *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.

■■ Counsel for defendant with leave of court has made an additional argument directed to the sentence. Counsel has attempted to distinguish *Murphy* and has also cited cases such as *People v. Colone* (1978), 56 Ill. App. 3d 1018, 372 N.E.2d 871, *appeal denied* (1978), 71 Ill. 2d 603, and *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670. We have given careful attention to each and all of these citations. It is our considered opinion that the Supreme Court of Illinois has directed that (*People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182):

> "Absent an abuse of discretion, the sentence imposed by the trial court will not be altered."

In our opinion, the matter of the sentence in the case at bar is covered by this ruling of the supreme court. In the instant case the trial court reached its decision after careful consideration of all proper factors bearing upon the sentence. We cannot say that the sentence here reflects an abuse of discretion by the trial court.

Accordingly, except for the vacation of the conviction and sentence on two counts, the judgment of the circuit court is affirmed.

Affirmed in part and vacated in part.

McGLOON and CAMPBELL, JJ., concur.