THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE ROBINSON, Defendant-Appellant.

First District (1st Division)    No. 80-0058

Opinion filed March 16, 1981.

James J. Doherty, Public Defender, of Chicago (Gerald Winiecki, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Frank Castiglione, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Eddie Robinson, was charged by information in the circuit court of Cook County with one count of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and two counts of indecent liberties with a child (sexual intercourse; lewd fondling or touching) (Ill. Rev. Stat. 1979, ch. 38, pars. 11—4(a)(1), 11—4(a)(3)). Following a jury trial, he was found guilty of one count of indecent liberties with a child (lewd fondling or touching) and not guilty on the remaining charges. He was sentenced to four years imprisonment. Defendant appeals and presents the following issues: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether it

was error to admit the testimony of the seven-year-old complainant; and (3) whether it was error to allow the complainant and her mother to testify to a statement made by the complainant on the morning after the alleged incident.

Before trial, a hearing was held to ascertain the competence of the seven-year-old complainant (six at the time of the incident). In response to questioning by the court, she stated her name, where she attended school and the address where she lived with her mother. In response to the court's question as to the meaning of the oath, she responded, "You telling the truth." She also stated that people who don't tell the truth "get a punishment" and if she told her mother a lie she would have to stand in the corner. The witness knew who the judge was, but did not know what goes on in a courtroom. Over the objection of defendant's counsel, the trial court found her competent to testify.

At the trial, complainant testified that on March 22, 1978, defendant, who was her cousin, was babysitting for her younger sister and brothers. After being in school all day, she arrived home at around 2:30 to 3 p.m. with her older brother, Michael. She then watched television and did her homework. Defendant pushed her brother out into the hallway, locking him out. Defendant then pushed her onto the floor, slapped her and raised her dress.

To the next question, "Then what happened?" she was unresponsive. It was only after two recesses and numerous questions from the prosecutor that she responded, "Put his penis in my vagina." She testified that she was crying and screaming the whole time.

Although she was with her mother later that night, she did not tell her, nor did she tell anybody else that night. It was not until the morning that she told her mother what had happened. She identified the blood-stained slip she wore on the day of the alleged incident.

Michael, her brother, testified that he and his sister arrived home from school about 3 p.m. on the day in question. His cousin, the defendant, was present in the home, babysitting for his younger brothers and sister. Michael testified that he was in the hallway of the home after he was pushed outside by defendant. Michael said he was locked out when he heard screams from inside.

Complainant's mother testified that she had left the home around 10 a.m., after her niece, who was defendant's older sister, had left, and that she came home from grocery shopping at about 4 p.m. on the day of the alleged incident. The complainant was downstairs when she came home and helped her put away the groceries. During this time complainant said nothing of the alleged incident to her mother. Her daughter went to bed at 6 p.m., woke up around 8 p.m., ate dinner without saying anything,

went back to bed 10 minutes later and was not seen by her mother until the following morning.

The mother further testified that when complainant came into her bedroom the next morning she was "walking bow-legged," had a bruise on the side of her face and acted nervous. She noticed that her daughter was wearing the same clothes as on the previous day. She then had a conversation with her daughter, had her lie down on the bed, took off her panties and found that there was blood in her vagina. The mother identified the slip which she had purchased for complainant and which had never been washed before. She also identified the blood stains on the slip as those she saw the day she examined her daughter.

Complainant's mother further testified that she took complainant to St. Bernard's Hospital. Dr. M. J. Fu conducted a physical examination of complainant on March 23, 1978. He testified that he found a bruise on her cheek which he concluded was a recent injury. He also found three small lacerations at the opening of the vagina. Further examination was not made because complainant became scared and refused to proceed with the examination. Dr. Fu further testified that the injuries occurred between eight to 16 hours before his examination and that the injuries he found were consistent with sexual penetration.

Officer Thompson testified that he arrested defendant on March 23, 1978, informed him of his rights and related to him the alleged facts of the previous day; defendant was supposedly a babysitter and his cousin alleged he had raped her. The officer testified that defendant stated that he had been at the house, but that he had not raped his cousin.

Defendant's older sister testified for the defense. She, with her baby, had been living in the household of complainant's mother at the time of the alleged incident. She testified that on the day of the alleged incident she never left the residence; complainant's mother left the residence around 1 p.m. to go shopping and returned at 4 p.m. with her groceries. Complainant was present while the groceries were being put away. Defendant first arrived during this time and asked complainant's mother for his money. There was an argument and defendant left after fifteen minutes.

Defendant argues that he was not proven guilty beyond a reasonable doubt because complainant's testimony was neither clear and convincing in nature nor was it corroborated. (See *People v. McGrath* (1963), 28 Ill. 2d 132, 190 N.E.2d 746.) The duty of reviewing courts in cases involving indecent liberties with a child has been stated in *People v. Nunes* (1964), 30 Ill. 2d 143, 146, 195 N.E.2d 706:

> "It is axiomatic that a charge of indecent liberties is an accusation easily made, hard to be proved, and harder to be defended by the

party accused. (*People v. Hinton*, 14 Ill. 2d 424.) In such cases reviewing courts are especially charged with the duty of carefully examining the evidence, and while due weight must be given to the judgment of the jury as to the credibility of the witnesses, it is our duty to reverse the judgment if the evidence is not sufficient to remove all reasonable doubt of the defendant's guilt and create an abiding conviction that he is guilty of the crime charged. * * *."

In support of his argument, defendant points to several factors to show that complainant's testimony was neither clear and convincing nor corroborated. Defendant argues that the fact that there was no prompt complaint of the alleged act and that the complainant did not immediately describe the act during direct examination indicate the testimony is not of a clear and convincing nature.

■■ It is well-settled that a victim's complaint need not be made within a definite time limit. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Ristau* (1936), 363 Ill. 583, 2 N.E.2d 833.) Considering the circumstances of this case, we cannot attach much significance to the lack of a prompt complaint. Complainant testified that she was threatened by defendant at the time of the incident. This fear, combined with the guilt and shame associated with such degrading acts felt by a six-year-old girl, clearly explains the lack of a "prompt" complaint.

In *People v. Tappin* (1963), 28 Ill. 2d 95, 190 N.E.2d 806, a complaint was not made until the victim, a seven-year-old child, was questioned several days later by her mother. A doctor's examination, made one week after the incident, revealed physical injuries, thus corroborating the complaint. The facts in this case are comparable. Here, a medical examination was made less than 24 hours after the incident. Physical injuries consistent with a sexual attack substantiated complainant's complaint made the morning after the incident.

It is quite understandable, considering her age and the revulsion to the crime of which she was the victim, that she would be hesitant in relating the details of the incident. (See *People v. Hood* (1974), 59 Ill. 2d 315, 319 N.E.2d 802.) The record indicates that she had become upset and started crying during her testimony. All of the recesses were made upon the trial court's own motion.

■■ Defendant also urges that complainant's answer "Put his penis in my vagina" used language beyond her years, thus showing that her testimony was not clear and convincing. We cannot accept this argument where a review of the record reveals that her testimony states in detail the acts which were performed upon her. She could not have so testified unless she had experienced them. (*People v. Tappin.*) The explicit language used cannot destroy the clear and convincing nature of her testimony.

■■ Defendant further argues that complainant's testimony is uncorrobo-

rated and, therefore, creates a doubt as to his guilt. To show that it was uncorroborated, he specifically points to the testimony of complainant's mother and brother and the medical testimony of Dr. Fu. It is true, as defendant asserts, that the testimony of complainant's mother and that of her son, Michael, appear to be inconsistent at times. However, the record does not reveal any variances in that testimony with the testimony of complainant herself. Further, any discrepancies involve matters collateral to the essential elements of the crime. The fact that there were such minor discrepancies does not destroy the credibility of the witnesses, but goes only to the weight to be accorded by the trier of fact. *People v. Krison* (1978), 63 Ill. App. 3d 531, 380 N.E.2d 449, *appeal denied* (1978), 71 Ill. 2d 619. See *People v. Britton* (1980), 80 Ill. App. 3d 482, 400 N.E.2d 33; *People v. Watts* (1974), 19 Ill. App. 3d 733, 312 N.E.2d 672.

Defendant characterizes the medical testimony as "ambivalent" because on direct examination the injuries were described as lacerations and during cross-examination they were described as scratches. This testimony also revealed that there was an injury consistent with forced entry and sexual penetration. In its essence, this testimony corroborates the testimony of the complainant. All that was presented was an issue of credibility—an issue for the jury, as trier of fact, to resolve. *People v. Krison.*

We find the testimony of the complainant to be clear and convincing and substantially corroborated and proved defendant's guilt beyond a reasonable doubt.

Defendant also argues that the trial judge failed to determine properly the competency of the seven-year-old complainant to testify. We disagree. The competency of a young witness is not determined by age, but by the degree of intelligence of the child and whether the witness is sufficiently mature to receive correct impressions by his senses to recollect and narrate intelligently and to appreciate the moral duty to tell the truth. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 225 N.E.2d 10, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141; *People v. Kincaid* (1980), 87 Ill. App. 3d 552, 409 N.E.2d 469.) The competency is to be determined by the trial judge and, while this determination is reviewable, it is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that the decision will be reversed. *People v. Davis* (1957), 10 Ill. 2d 430, 140 N.E.2d 675, *cert. denied* (1957), 355 U.S. 820, 2 L. Ed. 2d 35, 78 S. Ct. 25; *People v. Ballinger.*

■■ We have carefully reviewed the record and find no reason to disturb the trial judge's determination that the complainant was competent to testify.

Defendant contends that the trial court erred in allowing testimony

that complainant complained to her mother. Error was committed, it is argued, when both the complainant and her mother were allowed to testify that a complaint was made. There is no doubt that the complainant did not relate the facts of the incident to anybody until the morning after the occurrence. At that time, in response to questioning by her mother, she stated what had happened. At trial, complainant's only testimony in this regard was to affirm that she had made the complaint to her mother.

■■ Defendant asserts that this testimony is inadmissible because it was neither a spontaneous declaration nor a corroborative complaint. (See *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.) We disagree. The 16-hour delay in telling her mother did not destroy it as a spontaneous declaration. (*People v. Ristau* (1936), 363 Ill. 583, 2 N.E.2d 833.) Complainant's statement to her mother was also clearly admissible as a corroborative complaint. The purpose of admitting a corroborative complaint is to negate the presumption that would otherwise arise that nothing had in fact occurred. (See *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285; *People v. Damen.*) In *Damen*, it was held that corroborative complaints are admissible over hearsay objection when only the fact of the complaint, and not the details thereof, is stated. No details were given here by either complainant or her mother—only the fact that a complaint was made.

■■ Defendant also contends he was prejudiced by the testimony of complainant's mother that her daughter was crying the next morning and that complainant told her of the threat by defendant. Upon objection by defense counsel, this testimony was stricken and the jury was instructed to disregard it. The jury was also instructed generally to disregard testimony that the court had stricken and to consider only testimony which the court had received. Defendant claims that reversible error was committed because the jury had heard this hearsay evidence. We disagree. Defendant's prompt objection and the trial court's prompt action in sustaining the objection and in admonishing the jury cured any prejudicial error which may have resulted from the incident (*People v. Jodie* (1979), 79 Ill. App. 3d 348, 398 N.E.2d 595), particularly when coupled with the trial court's general instructions to the jury.

The conviction and sentence are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.