NOTICE

Decision filed 05/04/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250620-U

NO. 5-25-0620

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Pope County. |
| | ) | |
| v. | ) | No. 24-CF-2 |
| | ) | |
| ADAM E. TURNER, | ) | Honorable |
| | ) | Jayson M. Clark, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOLLINGER delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction of criminal sexual assault, where the trial court determined the victim's testimony to be highly credible and there was sufficient evidence to establish defendant's guilt at trial beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant-appellant, Adam E. Turner, was found guilty of one count of criminal sexual assault, a Class X felony, and sentenced to 30 years in the Illinois Department of Corrections. We find the trial court did not err when it found him guilty beyond a reasonable doubt, as the evidence was sufficient to support a finding of guilt.

¶ 3                          I. BACKGROUND

¶ 4    Defendant was charged by information on February 28, 2024, with one count of criminal sexual assault arising from an incident that occurred between May 1, 2021, and June 30, 2021, wherein it was alleged that defendant committed an act of sexual penetration with his minor niece

1

M.T., born June 9, 2008. The information stated that he placed his penis in M.T.'s vagina, and that he had also previously been convicted of criminal sexual assault on September 17, 2002.

¶ 5    The victim, M.T., testified at trial. She testified that, between the dates of May 1, 2021, and June 30, 2021, she lived with her grandmother, Mary Turner, in Pope County. There were two trailers on the property where her grandmother lived. M.T., her brother, her grandmother, an uncle (who is not defendant), her uncle's paramour, and her cousins lived in one trailer. Defendant and M.T.'s father, Matthew Turner, lived in a second trailer. M.T. testified that she was not alone with defendant often, and tried to avoid him the few times they were alone together because he sexually assaulted her in the trailer he resided in. M T. explained that, a few days prior to the sexual assault, she was asked to pick out a room in the trailer her father and defendant shared, as she was going to live there. M.T. ultimately did so and, on the day of the incident, she returned to the room and fell asleep on her mattress that was on the floor at the time because it had no bed frame. When she fell asleep, she was fully dressed in pajamas.

¶ 6    M.T. testified that, after falling asleep on the mattress she awoke in the night while lying on her back and defendant was nude and on top of her. She no longer had her pajama bottoms on when she awoke, and she had not taken her pajama bottoms off. In testifying about defendant, M.T. stated, "[H]e was on top of me with his dick in me while he was moving forward and backwards." She later clarified that his penis was in her vagina, stating that it did not feel "pleasant." She said, "I told him to stop," and, "He just said, Hold on." She could see defendant's beard, hear his voice, and affirmed that there was no "doubt in [her] mind that the man on top of [her]" was defendant. She testified that he stopped a few minutes after he told her to "[h]old on," and, after he stopped, he grabbed "some type of cloth and wiped his area off and my area," clarifying that the areas she was referring to were his penis and her vagina. After defendant "wiped

2

[her] off" she "grabbed [her] clothes [got dressed] and went to [her] grandmother's trailer and went to bed." She explained that she never had possession of the cloth defendant used, and she was unaware what happened to it after the incident. M.T. denied telling anybody what she just endured when she arrived at her grandmother's trailer because "[she] was scared" and "didn't think anyone would believe [her]."

¶ 7    M.T. said that she received a social media message from defendant between May 1, 2021, and June 30, 2021. She testified that the message read "You should come over so we can make love with each other." She explained that she received the message while with Lilly Walker, the daughter of her father's paramour. M.T. testified that she felt uncomfortable after receiving the message from defendant, and showed Lilly. M.T. was asked if she showed anyone else the message from defendant, and she replied, "No, sir. *** Because *** she told me to block him and delete the message, and I blocked him." M.T. testified that the message automatically deleted when she blocked defendant. M.T. said that she told Alicia Walker, Lilly's mother, about the message.

¶ 8    M.T. testified that she ultimately did come forward with a partial story of the sexual assault she endured later in 2021, after defendant had been incarcerated for an unrelated crime. While she was interviewed in Anna, Illinois, by a child advocate, M.T. acknowledged that she did not disclose "the full truth." She testified that she only disclosed that defendant had "touched [her] breast" in the 2021 interview.

¶ 9    M.T. testified that in January 2024 the sexual assault she endured resurfaced in the form of nightmares after she found out defendant was going to be released from prison soon. She explained, "I found out that he was getting out, and I got afraid that he would do it again and started getting nightmares." She detailed that all her nightmares involved defendant, with some nightmares entailing her being kidnapped by defendant and being sexually assaulted again, and

3

some with defendant dragging her off her school bus. She testified that her mental health at the time was "[n]ot good" and she was also unable to sleep. M.T. said she ultimately informed her mother, Marjorie Turner, that "[she] was raped" by defendant in 2021. She was interviewed by another child advocate, this time in Harrisburg, Illinois, and in this 2024 interview she fully disclosed the sexual assault defendant committed against her. M.T. affirmed that she had not provided a full disclosure of the sexual assault prior to telling her mother and the child advocate in Harrisburg, because she was "[s]cared that nobody would believe [her]."

¶ 10　　Lilly Walker also testified regarding the message M.T. received from defendant between May 1, 2021, and June 30, 2021. Lilly explained that she and M.T. were walking outside the apartment Lilly lived in, when M.T. said, "Hey, *** look at this text that I got." Lilly said that she saw the text, and the text read "Why don't you come over so I can make love to you." She testified that the message came from defendant, and that she told M.T. "that she needed to block him, but before she blocked him, um, that she needed to tell my mom and talk to her about it and then—so she's made aware and then block him." Lilly affirmed that M.T. heeded her advice, and was able to show Lilly's mother, Alicia Walker, the message from defendant, and that Lilly was "present when [M.T.] talked to Alicia."

¶ 11　　Alicia Walker also testified regarding the message M.T. received from defendant between May 1, 2021, and June 30, 2021. Alicia explained that she became aware of the message after M.T. and Lilly were walking outside of her apartment. Alicia said that the two girls came through the front door and that M.T. told Alicia about the message. Alicia testified that she did not have an opportunity to look at the message because her "daughter told [M.T.] to block [defendant] and to delete it. They were both scared. They didn't know what to do." Alicia explained that she was told about the contents of the message, but never saw the message.

¶ 12 Marjorie Turner, M.T.'s mother, also testified. She described the same living situation M.T. had previously testified about. Marjorie said that she started to have concerns regarding M.T.'s behavior a few months prior to defendant being released from prison. M.T. "was waking up crying, having nightmares. She was afraid to leave the house without me or somebody with her. She didn't want to go outside. *** [H]er whole demeanor changed, and she was afraid, acting afraid." She noted a "definite" change in M.T.'s behavior, and that, before the change, M.T. was "[n]ormal, happy, going out, hanging out with her friends," and was a "normal teenage young lady." She testified that M.T.'s grades also began to suffer during that time, where, previously, she was getting "As and Bs," M.T. started getting "Cs and Ds." Marjorie explained that the change in M.T's behavior came after M.T. became aware that defendant was soon to be released from prison. Marjorie testified that M.T. told her that she was scared about defendant getting out of prison. She also said that M.T. told Marjorie for the first time in 2024 about the sexual assault that took place in 2021, and also about the message M.T. received from defendant in 2021.

¶ 13 After the State's case in chief, defendant put on no evidence. When announcing its decision, the trial court stated it considered all the evidence and found M.T.'s testimony to have "a high level of credibility." At the close of the bench trial on August 27, 2024, defendant was found guilty of criminal sexual assault.

¶ 14 On February 11, 2025, defendant was sentenced. During the sentencing hearing, the trial court made note that it reviewed defendant's presentencing investigation report and the attached documents filed on October 8, 2024. Among the attached documents the trial court reviewed were defendant's many prior convictions, including the 2002 criminal sexual assault noted in the information for defendant's present conviction. The 2002 information for the criminal sexual assault provided that on June 8, 2002, defendant sexually penetrated his stepdaughter who was

5

under 18 years old, having placed his penis in her vagina. For the present crime, in light of the presentencing investigation, the other attachments and documents, and the aggravating factors, the trial court sentenced defendant to 30 years in the Illinois Department of Corrections with a mandatory supervised release for an indeterminate period of 3 years to natural life. This timely appeal followed.

¶ 15                                II. ANALYSIS

¶ 16     Defendant argues on appeal that the evidence at trial was insufficient to prove that he committed criminal sexual assault beyond a reasonable doubt. To support his argument, he makes six claims regarding why, in his view, M.T.'s testimony lacked credibility, asserting: (1) there was no corroborating testimony regarding the sexual assault; (2) M.T. initially reported a different version of events in 2021; (3) M.T. did not report the current version of events until 2024; (4) M.T. only came forward with the current version of events after she learned defendant was soon to be released from prison; (5) M.T., Lilly, and Alicia's testimonies regarding the message from defendant were inconsistent; and (6) no physical or documentary evidence corroborated M.T.'s testimony.

¶ 17     The State responds that a determination regarding the credibility of a witness is best left to the trier of fact. The State cites case law indicating that: (1) circumstantial evidence can be sufficient to support a conviction, (2) delayed reporting of a sexual assault can be reasonable in certain circumstances, (3) minor inconsistencies do not automatically create a reasonable doubt of guilt, and (4) a victim's testimony does not need to be corroborated by physical or medical evidence to sustain a conviction of criminal sexual assault.

¶ 18     In defendant's reply, he states that he is not asking this court to retry him, that the State ignored credibility issues, and restates claims from his initial argument. We affirm defendant's

criminal sexual assault conviction, finding that the trial court found M.T. to be credible. We see no reason to disturb the trial court's credibility determination, and, since M.T.'s testimony was found to be credible, the evidence at trial was sufficient to support a finding of defendant's guilt beyond a reasonable doubt.

¶ 19    "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (citing *People v. Vriner*, 74 Ill. 2d 329, 342 (1978); *People v. Manion*, 67 Ill. 2d 564, 578 (1977); *People v. Bybee*, 9 Ill. 2d 214, 221 (1956)). "When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, this court will not retry the defendant." *People v. Smith*, 185 Ill. 2d 532, 541 (1999) (citing *People v. Wittenmyer*, 151 Ill. 2d 175, 191 (1992)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "[T]he weight of the evidence and credibility of witnesses is strictly within the competence of the fact finder." *People v. Ellis*, 74 Ill. 2d 489, 496 (1978) (citing *People v. Orlando*, 380 Ill. 107, 119 (1942); *People v. Novotny*, 41 Ill. 2d 401, 412 (1968); *People v. Yarbrough*, 67 Ill. 2d 222, 227 (1977)).

¶ 20    Addressing defendant's argument, we find that his claims fail to make a showing that "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt" especially "after viewing the evidence in the light most favorable to the prosecution." *Collins*, 106 Ill. 2d at 261; *Jackson*, 443 U.S. at 319. "A person commits criminal sexual assault if

7

that person commits an act of sexual penetration and *** is a family member of the victim, and the victim is under 18 years of age." 720 ILCS 5/11-1.20(a)(3) (West 2020). Defendant's argument on appeal is best summarized as an attack on M.T.'s credibility, asserting that her testimony could not support defendant's guilt beyond a reasonable doubt. As previously stated, credibility determinations and the weight of the evidence are best left to the fact finder.

¶ 21 Regarding defendant's arguments noting the lack of corroborating testimony or evidence to support M.T.'s testimony, we first note that our supreme court in *People v. Schott*, 145 Ill. 2d 188, 200-02 (1991), did away with the need for clear and convincing or substantially corroborated testimony from a victim to support a conviction for a sex offense. Our court in *People v. Welton*, 2017 IL App (5th) 150080-U, ¶ 67, interpreted *Schott*'s determination to mean "that the testimony of a complainant in a sex offense case does not need to be supported by circumstantial evidence or corroborated by other witnesses in order to be found credible enough to support a finding of guilt beyond a reasonable doubt." We find no reason to depart from our interpretation of *Schott*. As such, defendant fails to establish that the lack of corroboration here so undermines M.T.'s credibility that her testimony was improbable or unsatisfactory and created a reasonable doubt as to defendant's guilt.

¶ 22 Defendant argues that M.T.'s initial outcry was not, to quote M.T., "the full truth" and that it took M.T. until early 2024 to fully disclose the sexual assault she endured in 2021. The State counters that any delay in disclosure is not reflective of M.T.'s lack of credibility and cites to the applicable statute of limitations underlying defendant's conviction. "When the victim is under 18 years of age at the time of the offense, a prosecution for criminal sexual assault *** may be commenced at any time." 720 ILCS 5/3-6(j)(1) (West 2020). The State argues that, through the aforementioned statute, the legislature chose for this crime to be prosecuted at any time.

8

¶ 23 *People v. Damen* involved an allegation of sexual assault, and provided, "there is no fixed or definite limit of time within which the complaint must be made." *People v. Damen*, 28 Ill. 2d 464, 473 (1963) (citing *People v. Ristau*, 363 Ill. 583, 587 (1936)). The court went on to state that a complaint of sexual assault "made without inconsistent or unexplained delay may properly be shown," and the complaint "must have been spontaneous and not made as a result of a series of questions to which answers were given." *Id.* (citing *People v. Furlong*, 392 Ill. 247, 250 (1945); *People v. Davis*, 10 Ill. 2d 430 (1957); *People v. Fryman*, 4 Ill. 2d 224, 228 (1954)). In the case at bar, M.T. maintained that she did not report the full extent of her sexual assault out of fear. Further, M.T.'s ultimate full disclosure was spontaneous, as it followed months of sleeplessness and nightmares out of fear that, upon release, defendant would sexually assault her again. As such, the evidence does not support defendant's argument that M.T.'s expounded upon and delayed outcry so undermines M.T.'s credibility that her testimony was improbable or unsatisfactory and created a reasonable doubt as to defendant's guilt.

¶ 24 Defendant also argues, "M.T.'s testimony, together with the testimonies of Lilly and Alicia Walker, revealed inconsistencies that cannot be ignored." Defendant fails to cite any revealed inconsistency. From a review of the record, we believe what defendant meant to highlight is that M.T. testified that she only showed the vulgar message from defendant asking M.T. to "come over" so they could "make love" to Lilly, and merely told Alicia about the message; that Lilly testified that M.T. showed both Lilly and Alicia the message; and that Alicia testified that M.T. only told Alicia about the message, and did not show her. "[I]t is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole." *Cunningham*, 212 Ill. 2d at 283. "The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." *Smith*, 185 Ill. 2d at 541. We fail to see how highlighting this inconsistency establishes

that M.T.'s testimony is not credible. Both M.T. and Lilly testified to a substantially similar message from defendant about "mak[ing] love" with M.T. Also, both M.T. and Alicia testified that Alicia did not see the vulgar message, but was told about it. Defendant also fails to establish how such an inconsistency so undermined M.T.'s credibility that her testimony was improbable or unsatisfactory and creates a reasonable doubt as to defendant's guilt.

¶ 25 Finally, regarding defendant's argument that M.T.'s credibility is undermined by the fact that she only gave a full disclosure of the sexual assault after learning defendant was soon to be released from prison, defendant's argument fails outright. Defendant's argument on this point spans a single sentence, and is undeveloped. Defendant fails to cite any case that would support a finding that M.T.'s full disclosure potentially initiating from the knowledge that defendant was soon to be released from prison in any way undermines her credibility. In fact, it logically follows that defendant's release from prison caused M.T. to finally fully disclose the sexual assault out of fear for her own safety, As such, defendant failed to establish how the timing of her full disclosure so undermined M.T.'s credibility that her testimony was improbable or unsatisfactory and created a reasonable doubt as to defendant's guilt.

¶ 26                                    III. CONCLUSION

¶ 27    Accordingly, we affirm defendant's conviction of criminal sexual assault.


¶ 28    Affirmed.